# Matter of J. M. ACOSTA, Respondent

*Decided August 29, 2018*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) A conviction does not attain a sufficient degree of finality for immigration purposes until the right to direct appellate review on the merits of the conviction has been exhausted or waived.

(2) Once the Department of Homeland Security has established that a respondent has a criminal conviction at the trial level and that the time for filing a direct appeal has passed, a presumption arises that the conviction is final for immigration purposes, which the respondent can rebut with evidence that an appeal has been filed within the prescribed deadline, including any extensions or permissive filings granted by the appellate court, and that the appeal relates to the issue of guilt or innocence or concerns a substantive defect in the criminal proceedings.

(3) Appeals, including direct appeals, and collateral attacks that do not relate to the underlying merits of a conviction will not be given effect to eliminate the finality of the conviction.

FOR RESPONDENT:  Nicholas John Phillips, Esquire, Albany, New York

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Adam Perl, Assistant Chief Counsel

BEFORE:  Board Panel:  KELLY and GREER, Board Members.  Concurring and Dissenting Opinion:  MALPHRUS, Board Member.

KELLY, Board Member:

In a decision dated August 31, 2017, an Immigration Judge found the respondent removable under section 237(a)(2)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(i) (2012), as an alien convicted of a crime involving moral turpitude.[1]  The Immigration Judge denied the respondent's motion to terminate, as well as his applications for cancellation

---

[1]  The respondent was also charged under sections 237(a)(2)(A)(iii) and (B)(i) of the Act, as an alien convicted of an aggravated felony and a controlled substance violation, respectively.  Through counsel, the respondent conceded removability based on the controlled substance charge.  The Immigration Judge did not sustain the aggravated felony charge, but because the Department of Homeland Security has not challenged that finding on appeal, the issue is not before us.

of removal under section 240A(a) of the Act, 8 U.S.C. § 1229b(a) (2012), and for a waiver of inadmissibility under former section 212(c) of the Act, 8 U.S.C. § 1182(c) (1994), and ordered him removed from the United States. The respondent has appealed from that decision and has filed a motion to remand based on new evidence. The Department of Homeland Security ("DHS") opposes both the appeal and the motion to remand. The appeal will be dismissed in part, and the record will be remanded to the Immigration Judge for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of the Dominican Republic who was admitted to the United States as a lawful permanent resident on March 11, 1992. On May 18, 1993, he pled guilty to attempted criminal sale of a controlled substance in the third degree in violation of section 110-220.39 of the New York Penal Law. On April 7, 2016, the respondent pled guilty to criminal possession of a controlled substance (narcotic) in the third degree in violation of section 220.16(12) of the New York Penal Law.

Based on the respondent's 1993 conviction, the Immigration Judge found him removable under section 237(a)(2)(A)(i) of the Act for having been convicted of a crime involving moral turpitude committed within 5 years after admission, for which a sentence of 1 year or longer may be imposed.[2] The respondent has appealed from that finding, arguing that his offense is not a crime involving moral turpitude.

While his appeal was pending, the respondent filed a motion to remand. In support of his motion, he submitted evidence that on October 10, 2017, the Appellate Division of the Supreme Court for the First Judicial Department in the County of New York granted his motion for leave to file a late appeal of his 2016 conviction and deemed his notice of appeal to be timely filed. The respondent argues that because a direct appeal of that conviction is now pending, it lacks the requisite finality to qualify as a "conviction" for immigration purposes under section 101(a)(48)(A) of the Act, 8 U.S.C. § 1101(a)(48)(A) (2012).[3] The respondent therefore contends

---

[2] The crime of criminal sale of a controlled substance in the third degree in violation of section 220.39 of the New York Penal Law is a class B felony for which a sentence of 1 year or longer may be imposed. N.Y. Penal Law § 70.00 (McKinney 1993).

[3] In this regard, the respondent cites *Abreu v. Holder*, 378 F. App'x 59 (2d Cir. 2010), which vacated our decision in *Matter of Cardenas Abreu*, 24 I&N Dec. 795, 802 (BIA 2009) (en banc), where we held that a pending late-reinstated appeal granted pursuant to New York's late appeal procedure did not undermine the finality of the alien's conviction. Assuming arguendo that all direct appeals must be exhausted or waived before a conviction becomes "final" for immigration purposes, the court held that there is no distinction

that since his 2016 conviction does not support the controlled substance charge, he is eligible under former section 212(c) to waive removability based on his 1993 conviction for a crime involving moral turpitude.[4]

## II. CRIME INVOLVING MORAL TURPITUDE

To determine whether the respondent's State drug offense is a crime involving moral turpitude, we employ the categorical approach, which requires us to "focus on the minimum conduct that has a realistic probability of being prosecuted under the [elements of a] statute of conviction, rather than on the facts underlying the respondent's particular violation of that statute," to see whether those elements categorically "fit[] within the generic definition of a crime involving moral turpitude." *Matter of Silva-Trevino*, 26 I&N Dec. 826, 831 (BIA 2016); *see also Efstathiadis v. Holder*, 752 F.3d 591, 595 (2d Cir. 2014) (per curiam).

"To involve moral turpitude, a crime requires two essential elements: reprehensible conduct and a culpable mental state." *Matter of Silva-Trevino*, 26 I&N Dec. at 834; *see also Efstathiadis*, 752 F.3d at 595. Conduct is "reprehensible" if it is "inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Matter of Silva-Trevino*, 26 I&N Dec. at 833 (citation omitted). A "culpable" mental state is one that requires deliberation or consciousness, such as specific intent, knowledge, willfulness, or recklessness. *Id.* at 834.

The respondent was convicted of attempted criminal sale of a controlled substance in the third degree under New York law. Section 220.39 of the New York Penal Law provides that a person is guilty of criminal sale "when he knowingly and unlawfully sells" a specified controlled substance. Under section 110.00, "[a] person is guilty of an attempt to commit a crime [under New York law] when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime."[5]

---

between late-reinstated appeals and direct appeals under New York law. It also remanded for us to address, in the first instance, whether section 101(a)(48)(A) of the Act is "ambiguous with respect to the finality requirement." *Abreu*, 378 F. App'x at 62.

[4]  Under 8 C.F.R. § 1003.2(c)(1) (2018), a motion to reopen or remand for "consideration of an application for relief under section 212(c) of the Act . . . may be granted if the alien demonstrates that he or she was statutorily eligible for such relief prior to the entry of the administratively final order of deportation."

[5]  For immigration purposes, there is no distinction between a substantive offense and an attempt to commit it. *See Matter of Vo*, 25 I&N Dec. 426, 428 (BIA 2011) ("An attempt involves the specific intent to commit the substantive crime, and if commission of the substantive crime involves moral turpitude, then so does the attempt . . . ."); *Matter of Katsanis*, 14 I&N Dec. 266, 269 (BIA 1973) (same).

We have held that the Federal offense of possession of a controlled substance with the intent to distribute is a crime involving moral turpitude because 21 U.S.C. § 841(a)(1) (1988) requires a mental state of knowledge or intent, and the unlawful distribution of drugs is inherently reprehensible conduct. *Matter of Khourn*, 21 I&N Dec. 1041, 1045–47 (BIA 1997); *see also Matter of Gonzalez Romo*, 26 I&N Dec. 743, 746–47 (BIA 2016) (holding that solicitation to possess marijuana for sale under Arizona law is categorically a crime involving moral turpitude); *Matter of Y-*, 2 I&N Dec. 600, 602 (BIA 1946) (holding that the unlawful sale of opium is a crime involving moral turpitude, because it is an act that "creates human misery, corruption, and moral ruin in the lives of individuals [and] is "necessarily . . . base and shameful" (citation omitted)). Because the minimum conduct that has a realistic probability of being prosecuted under the respondent's State statute of conviction necessarily involves inherently reprehensible conduct committed with a mental state of knowledge or intent, we conclude that it is categorically a crime involving moral turpitude. *See Matter of Silva-Trevino*, 26 I&N Dec. at 831.

We are unpersuaded by the respondent's assertion that the intent in selling a drug may not be evil, such as where the seller's intent is to relieve another person's medical condition. This argument is unavailing, particularly where, as here, a law that specifically prohibits the intentional unauthorized sale of drugs has been enacted in order to prevent harm to the general population. *See Matter of Y-*, 2 I&N Dec. at 603 ("Because so many persons become addicts, most of the States, if not all of them, have enacted laws restricting the right to dispense or prescribe such drugs to registered pharmacists and physicians for medicinal purposes only and inflicting very severe penalties for their violation."); *cf. Matter of Kochlani*, 24 I&N Dec. 128, 131 (BIA 2007) (holding that trafficking in counterfeit goods or services in violation of 18 U.S.C. § 2320 (2000) is a crime involving moral turpitude because it requires proof of intent to traffic and results in significant societal harm).

The respondent's argument that his offense is not a crime involving moral turpitude because it has no Federal analogue is also misplaced. It is not necessary to compare a Federal statute to the respondent's statute of conviction because the Federal controlled substances schedules and statutes are not controlling for purposes of determining whether a crime involves moral turpitude. It is the respondent's act of attempting to sell a controlled substance that is morally turpitudinous, not the specific drug involved. *See Matter of Khourn*, 21 I&N Dec. at 1047 (stating that "an evil intent is inherent in the crime of distribution of a controlled substance"). We therefore affirm

the Immigration Judge's determination that the respondent is removable under section 237(a)(2)(A)(i) of the Act.[6]

We also affirm the Immigration Judge's denial of the respondent's application for cancellation of removal for lawful permanent residents under section 240A(a) of the Act. The respondent was admitted in 1992, but he stopped accruing continuous residence about a year later in 1993, when he was convicted of "an offense referred to in section 212(a)(2) that render[ed] [him] . . . removable from the United States under section 237(a)(2)" of the Act. Section 240A(d)(1) of the Act. Because the respondent cannot establish that he has continuously resided in the United States for 7 years after being admitted in any status, he is unable to show that he is eligible for cancellation of removal pursuant to section 240A(a)(2) of the Act.[7]

## III.  FINALITY OF A CONVICTION

The respondent also seeks a remand based on new evidence that he timely appealed his 2016 State drug conviction after the New York court granted him permission to file a late-reinstated appeal. He argues that because his conviction is now on direct appeal, it is not sufficiently final for immigration purposes, so it cannot serve as a predicate for his removal or disqualify him from relief under former section 212(c) of the Act.

### A.  Statutory Text

We begin our analysis with the words of the statute. The term "conviction" was statutorily defined in the Act for the first time with the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"). Section 101(a)(48)(A) of the Act provides as follows:

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—

---

[6]   The respondent also argues that the Immigration Judge violated his due process rights by amending the DHS's factual allegation for the charge of removability based on his 1993 conviction for attempted sale of a controlled substance. We disagree. The Immigration Judge made a finding that the DHS could not show that the specific controlled substance was cocaine under the categorical approach, to which the DHS made no objection. The Immigration Judge therefore did not violate the respondent's right to due process by striking the reference to "cocaine" from the factual allegation after properly finding that the DHS could not establish the specific substance involved.

[7]   In light of this disposition, we need not address the respondent's remaining contentions regarding his eligibility for cancellation of removal.

> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
>
> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

### B. History of Section 101(a)(48)(A) of the Act

Prior to the passage of the IIRIRA, it was well established that a conviction did not attain finality for immigration purposes and therefore that the civil consequence of deportation did not attach until the alien had either exhausted or waived the right to direct appellate review. *See, e.g.*, *White v. INS*, 17 F.3d 475, 479 (1st Cir. 1994); *Martinez-Montoya v. INS*, 904 F.2d 1018, 1025 (5th Cir. 1990); *Morales-Alvarado v. INS*, 655 F.2d 172, 174–75 (9th Cir. 1981); *Marino v. INS*, 537 F.2d 686, 691–92 (2d Cir. 1976); *Aguilera-Enriquez v. INS*, 516 F.2d 565, 570 (6th Cir. 1975); *Will v. INS*, 447 F.2d 529, 532–33 (7th Cir. 1971); *Matter of Thomas*, 21 I&N Dec. 20, 21 n.1 (BIA 1995); *Matter of Polanco*, 20 I&N Dec. 894, 895–96 (BIA 1994); *Matter of Ozkok*, 19 I&N Dec. 546, 552 n.7 (BIA 1988). This principle was derived from the Supreme Court's decision in *Pino v. Landon*, 349 U.S. 901, 901 (1955) (per curiam), in which the Court reversed the decision of the lower court based on insufficient evidence in the record "that the conviction has attained such finality as to support an order of deportation within the contemplation of [former section] 241 of the Immigration and Nationality Act, 8 U.S.C.A. § 1251 [(1952)]."

Our decision in *Matter of Ozkok*, 19 I&N Dec. at 551–52, which predated the IIRIRA, set forth the prevailing standard to evaluate whether a conviction exists for immigration purposes. Under *Ozkok*, we considered that a person was convicted if "the court has adjudicated him guilty or has entered a formal judgment of guilt." *Id.* at 551. However, where adjudication of guilt was withheld, we required all of the following elements to be present:

> (1) a judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilty;
>
> (2) the judge has ordered some form of punishment, penalty, or restraint on the person's liberty to be imposed (including but not limited to incarceration, probation, a fine or restitution, or community-based sanctions such as a rehabilitation program, a work-release or study-release program, revocation or suspension of a driver's license, deprivation of nonessential activities or privileges, or community service); and
>
> (3) a judgment or adjudication of guilt may be entered if the person violates the terms of his probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding the person's guilt or innocence of the original charge.

*Id.* at 551–52. Although the standard did not explicitly address finality, we recognized the long-standing requirement that a conviction must have sufficient finality to be considered a valid predicate for immigration consequences to attach. *Id.* at 552 n.7 ("It is well established that a conviction does not attain a sufficient degree of finality for immigration purposes until direct appellate review of the conviction has been exhausted or waived.").

Congress' clear reliance on *Ozkok* in defining the term "conviction" indicates that it was fully aware of the precedent decisions of the Supreme Court, the Federal circuit courts, and the Board concerning the finality requirement. *See Lorillard v. Pons*, 434 U.S. 575, 581 (1978) ("[W]here . . . Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute."). Its nearly verbatim adoption of the *Ozkok* language "is akin to reenacting a portion of an existing statute while intending to preserve its attendant administrative and judicial interpretations." *Matter of Cardenas Abreu*, 24 I&N Dec. 795, 814 (BIA 2009) (en banc) (Greer, dissenting), *vacated*, 378 F. App'x 59, 62 (2d Cir. 2010); *see also Alaska v. Native Vill. of Venetie Tribal Gov't*, 522 U.S. 520, 530–31 (1998) (indicating that Congress implicitly intends to preserve the definition of terms when it adopts language verbatim from prior case law defining the same terms). *See generally Williams v. Taylor*, 529 U.S. 420, 434 (2000) ("When the words of the Court are used in a later statute governing the same subject matter, it is respectful of Congress and of the Court's own processes to give the words the same meaning in the absence of specific direction to the contrary."). However, we must consider the language of the statute to determine whether it is plain and unambiguous with respect to whether all direct appeals as of right must have been exhausted or waived for a conviction to be sufficiently "final" for immigration purposes. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).

## C. Ambiguity of the Statute

"In ascertaining the plain meaning of the statute, [we] must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). In order to determine Congress' intent, we may consider the overall "object and policy" of the law and examine the legislative history. *Massachusetts v. Morash*, 490 U.S. 107, 115 (1989); *see also Matter of Punu*, 22 I&N Dec. 224, 227 (BIA 1998).

There is no mention of finality in the definition of a "conviction" in section 101(a)(48)(A) of the Act. Such silence in the statutory scheme may create ambiguity. *See Barnhart v. Walton*, 535 U.S. 212, 218 (2002) ("[A] statute's] silence . . . normally creates ambiguity. It does not resolve it."). Congress' silence regarding finality in section 101(a)(48)(A) clearly does result in ambiguity.

When Congress enacted the current definition of a "conviction" at section 101(a)(48)(A), it adopted almost verbatim the language in *Ozkok*, except for the third prong of the standard regarding deferred or withheld adjudications. The legislative history of the IIRIRA reflects a clear congressional intent to eliminate the third prong for the specific purpose of avoiding the inconsistent outcomes that had resulted from the differing criminal procedures for deferred adjudications among the various States. H.R. Rep. No. 104-879, at 123 (1997), 1997 WL 9288 at *123 (stating that section 101(a)(48)(A) makes it "easier to remove criminal aliens, regardless of specific procedures in States for deferred adjudication"); H.R. Rep. No. 104-828, at 224 (1996) (Conf. Rep.), 1996 WL 563320 at *224 ("Joint Explanatory Statement") (stating that *Ozkok* "does not go far enough to address situations where a judgment of guilt . . . is suspended, conditioned upon the alien's future good behavior"); *see also Matter of Punu*, 22 I&N Dec. at 227. This history does not, however, evidence any intent to abandon the remaining law set forth in *Ozkok* regarding the meaning of the term "conviction"—including the question of finality. *See Matter of Cardenas Abreu*, 24 I&N Dec. at 798 ("The legislative history of the IIRIRA accompanying the adoption of the definition of a 'conviction' gave no indication of an intent to disturb this principle that an alien must waive or exhaust his direct appeal rights to have a final conviction.").

A proper regard for fundamental fairness leads us to expect that Congress would be clear if its intent was to eliminate the long-standing finality requirement regarding the right to appeal a conviction. *Cf. Alim v. Gonzales*, 446 F.3d 1239, 1249 (11th Cir. 2006) (stating that deeming a conviction to be final for immigration purposes after it was "vacated on appeal (with a judgment of acquittal entered) due to insufficient evidence" is "so foreign, so antithetical, to the long-standing principles underlying our criminal justice system and our notions of due process that we would expect Congress to have spoken very clearly if it intended to effect such results"). Because it has been silent with respect to the finality requirement, the resulting ambiguity in section 101(a)(48)(A) of the Act suggests that Congress intended to retain this well-established principle.

As the dissent notes, Congress preserved the finality requirement elsewhere in the Act. *See, e.g.*, sections 208(b)(2)(A)(ii), 237(a)(2)(D), 238(c)(3)(A)(iii), 241(b)(3)(B)(ii) of the Act, 8 U.S.C. §§ 1158(b)(2)(A)(ii),

1227(a)(2)(D), 1228(c)(3)(A)(iii), 1231(b)(3)(B)(ii) (2012). However, most of those statutes already contained finality language that was simply carried over when the IIRIRA was enacted. *See* former sections 241(a)(2)(D), 242A(d)(3)(A)(iii), 243(h)(2)(B) of the Act, 8 U.S.C. §§ 1251(a)(2)(D), 1252a(d)(3)(A)(iii), 1253(h)(2)(B) (1994). Therefore, we are not persuaded that the mention of finality in other parts of the Act and its absence in section 101(a)(48)(A) is dispositive of whether finality is required. Instead, we regard these references to finality as clarifying language that tends to shed light on what Congress means in the Act when it uses the term "conviction." This is particularly so given the history of the finality requirement and the notable lack of any stated or apparent purpose for preserving it in some parts of the statute and not in others. *See Matter of Cardenas Abreu*, 24 I&N Dec. at 820 (Greer, dissenting) ("If Congress had intended to remove the finality requirement under the Act, it presumably would have done so uniformly throughout the Act, rather than leaving finality intact in other provisions without apparent justification.").

Thus, we do not discern any affirmative congressional intent from the fact that Congress did not add the word "final" when it adopted the *Ozkok* language verbatim in its new definition of a "conviction," while preserving the language of existing provisions that referenced a "final" conviction. This situation is distinct from other circumstances where Congress has included language in one section of a statute and omitted it elsewhere. We therefore do not find any applicability of the "canon of statutory construction that '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Matter of M-H-Z-*, 26 I&N Dec. 757, 761 (BIA 2016) (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987)).

Moreover, although the statute is also silent with respect to convictions that have been vacated on the merits, we have consistently declined to strictly interpret the language of section 101(a)(48)(A) of the Act to exclude any exception in that regard. *See, e.g.*, *Matter of Pickering*, 23 I&N Dec. 621, 624–25 (BIA 2003) (distinguishing convictions that have been set aside for reasons related to a defect in the underlying criminal proceedings, which are not final for immigration purposes, from those vacated because of rehabilitation or immigration hardship), *rev'd on other grounds*, 465 F.3d 263, 269 (6th Cir. 2006); *Matter of Rodriguez-Ruiz*, 22 I&N Dec. 1378, 1379–80 (BIA 2000) (holding that there was no basis for removability where a criminal court order stated that the alien's conviction was vacated based on a legal defect). Most recently, in light of "Congress' silence regarding vacated convictions in section 101(a)(48)(A) of the Act," we reiterated that convictions vacated for procedural or substantive defects in the underlying

criminal proceedings are not valid for immigration purposes. *Matter of Marquez Conde*, 27 I&N Dec. 251, 254–55 (BIA 2018). We continue to view the analysis in *Marquez Conde*, which rejected a literal reading of the statute, as the correct interpretation.

## D. Decisions of the Circuit Courts

The ambiguity in the statutory definition is highlighted by the circuit courts' disparate interpretations of section 101(a)(48)(A) of the Act. *See Matter of Cardenas Abreu*, 24 I&N Dec. at 818 (Greer, dissenting). For example, the United States Courts of Appeals for the Second Circuit, in whose jurisdiction this case arises, has presented conflicting views in dicta on whether the finality requirement survived enactment of the IIRIRA. *Compare Puello v. Bureau of Citizen. & Immigr. Servs.*, 511 F.3d 324, 332 (2d Cir. 2007) ("IIRIRA . . . eliminate[d] the requirement that all direct appeals be exhausted or waived before a conviction is considered final under the statute."),[8] *with Walcott v. Chertoff*, 517 F.3d 149, 154 (2d Cir. 2008) (accepting the Government's argument that an alien's "March 1996 conviction was not deemed final for immigration purposes until July 1, 1998, when direct appellate review of it was exhausted"). Moreover, in vacating our decision in *Matter of Cardenas Abreu*, the Second Circuit has invited us to address on remand whether the finality requirement continues to exist under section 101(a)(48)(A). *See Abreu*, 378 F. App'x at 62.[9]

Other circuits have resolved this issue in favor of the continued vitality of the finality requirement. In the clearest statement on the question of finality since our publication of *Matter of Cardenas Abreu*, the Third Circuit concluded that an alien's conviction is not sufficiently final for immigration purposes until the right to direct appellate review has been exhausted or waived. *Orabi v. U.S. Att'y Gen.*, 738 F.3d 535, 541–42 (3d Cir. 2014) ("[W]e hold that the IIRIRA's elimination of the finality requirement in the case of *deferred adjudications* does not disturb the longstanding finality rule for direct appeals recognized in *Ozkok* . . . ."). This is the only circuit precedent to address the finality question in the context of a direct appeal as a matter of right in immigration proceedings.

---

[8] As the dissent noted in *Matter of Cardenas Abreu*, 24 I&N Dec. at 818–19, *Puello* did not concern the appeal of a conviction. The alien entered a guilty plea and challenged the effective date of the conviction, so that case did not involve the issue currently before us.

[9] During the pendency of this appeal, the Second Circuit issued an unpublished decision noting its "repeated[] acknowledg[ment] that *Puello*'s statement regarding finality was merely dicta and that the question remains open." *Mohamed v. Sessions*, 727 F. App'x 32, 34 (2d Cir. 2018). Citing a number of its prior decisions in this regard, the court stated that its "conflicting history of the issue" made it "clear . . . that the question remains quite unsettled." *Id.*

However, in deciding an alien's appeal from his unlawful reentry conviction, the Sixth Circuit concluded that the finality requirement was preserved in the case of a direct appeal. *United States v. Garcia-Echaverria*, 374 F.3d 440, 445 (6th Cir. 2004) ("To support an order of deportation, a conviction must be final. Finality requires the defendant to have exhausted or waived his rights to direct appeal. The defendant's exercise of post-conviction remedies does not, however, undermine the finality of his conviction." (citations omitted)). In addition, while deferring to our interpretation that a "guilty-filed disposition" under Massachusetts law fell under the second prong of the statute, the First Circuit suggested that there may not be a final conviction in the case of an appeal from the entry of a formal judgment of guilt under the first prong. *Griffiths v. INS*, 243 F.3d 45, 53–54 (1st Cir. 2001).

In the remaining circuits that have addressed the question of finality, the issue was not presented in the context of a direct appeal pending from a trial court's finding of guilt. *See Planes v. Holder*, 652 F.3d 991, 994–97 (9th Cir. 2011) (addressing a situation where the alien's appeal was from the sentence imposed following his guilty plea, rather than from his conviction); *Garcia-Maldonado v. Gonzales*, 491 F.3d 284, 290–91 (5th Cir. 2007) (noting that the alien's conviction had been affirmed while on petition for review, but stating that even though his appeal was pending at the time of the Board's decision, finality is no longer required); *United States v. Saenz-Gomez*, 472 F.3d 791, 793–94 (10th Cir. 2007) (holding, in the context of a sentence enhancement for illegal reentry, that where the alien's appeal from his aggravated felony conviction was still pending at the time of his removal—but was later dismissed—it was final when he was removed); *Montenegro v. Ashcroft*, 355 F.3d 1035, 1037–38 (7th Cir. 2004) (per curiam) (holding that the alien's conviction was final at the time he was ordered removed, despite the fact that he then had two petitions pending—a writ of certiorari and an appeal from the denial of his post-conviction petition—both of which were later denied).

However, as we noted in *Matter of Marquez Conde*, 27 I&N Dec. at 253, of the circuit courts that have addressed whether section 101(a)(48)(A) of the Act permits an exception for convictions vacated on the legal merits, all but the Fifth Circuit have adopted the approach we took in *Matter of Pickering*. *See, e.g.*, *Andrade-Zamora v. Lynch*, 814 F.3d 945, 948 (8th Cir. 2016) (citing *Pickering* in concluding that a "conviction will still stand for immigration purposes despite its vacatur" if it was vacated "for a reason unrelated to the merits of the case"); *Dung Phan v. Holder*, 667 F.3d 448, 452 (4th Cir. 2012) (holding that the alien's conviction was set aside for rehabilitative purposes, but recognizing that "[w]here a conviction is vacated

'based on a defect in the underlying criminal proceedings,' the conviction is 'no longer'" (quoting *Matter of Pickering*, 23 I&N Dec. at 624)).

Emphasizing Congress' silence on the effect to be given a conviction that has been vacated on the merits, the Eleventh Circuit found our interpretation of the statute in *Pickering* to be reasonable. *Alim*, 446 F.3d at 1247–50. Congress has similarly been silent with regard to the effect of a direct appeal on an alien's conviction. *See generally Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 222 (2009) ("It is eminently reasonable to conclude that [a statute's] silence is meant to convey nothing more than a refusal to tie the agency's hands . . . ."); *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984) (stating that where a "statute is silent or ambiguous with respect to the specific issue," an agency's interpretation should be given deference if it is based on a permissible construction of the statute).

In view of this congressional silence and the fact that "the circuit court decisions . . . offer conflicting statements" regarding the finality requirement, we have a "responsibility to interpret the Act." *Matter of Cardenas Abreu*, 24 I&N Dec. at 820 (Greer, dissenting). The language of section 101(a)(48)(A) of the Act is neither plain nor subject to an ordinary meaning, and Congress' intent regarding it is unclear. We must therefore craft a reasonable interpretation of the language that effectuates congressional intent as nearly as can be discerned. *Matter of Punu*, 22 I&N Dec. at 226 (citing *Chevron*, 467 U.S. at 842–43).

We have examined the language of section 101(a)(48)(A), its legislative history, and its relation to the design of the Act as a whole. We have also considered the prior Federal and Board case law regarding the finality of a conviction, of which Congress was aware when it enacted the IIRIRA. These and our careful application of the rules of statutory construction lead us to conclude that, in incorporating the language of the Board's precedent in *Ozkok* to define the term "conviction," Congress did not intend to abandon the prior interpretation regarding the finality requirement. Consequently, the long-standing requirement that a conviction must attain sufficient finality before immigration consequences attach has survived the enactment of the IIRIRA.[10]

---

[10] Because we conclude that section 101(a)(48)(A) of the Act is ambiguous with respect to whether all direct appeals must have been exhausted or waived for a conviction to be final for immigration purposes, our construction of the statute is entitled to deference so long as our interpretation is reasonable, at least in the Second Circuit, which has not directly addressed the finality issue. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005) ("A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion."); *see also Chevron*, 467 U.S. at 843.

E.  Requirements for Finality of a Conviction

In holding that the finality requirement continues to apply after the enactment of the IIRIRA, we emphasize that a conviction does not attain a sufficient degree of finality for immigration purposes until the right to direct appellate review on the merits of the conviction has been exhausted or waived.[11]  Consequently, absent proof of a waiver of appeal rights, a conviction does not achieve finality for immigration purposes until the time for filing an initial direct appeal has expired under the laws of the applicable jurisdiction.  However, once the DHS has established that a respondent has a criminal conviction at the trial level and that the time for filing a direct appeal has passed, a presumption arises that the conviction is final for immigration purposes.

To rebut that presumption, a respondent must come forward with evidence that an appeal has been filed within the prescribed deadline, including any extensions or permissive filings granted by the appellate court.[12]  He or she must also present evidence that the appeal relates to the issue of guilt or innocence or concerns a substantive defect in the criminal proceedings.  *See Matter of Marquez Conde*, 27 I&N Dec. at 255 (reaffirming *Matter of Pickering* and reiterating that "convictions that have been vacated based on procedural and substantive defects in the underlying criminal proceeding [are] no longer valid for immigration purposes"); *see also Matter of Rodriguez-Ruiz*, 22 I&N Dec. at 1379–80 (giving effect to the alien's vacated conviction where there was evidence by way of a court order that the conviction was vacated on the legal merits of the underlying criminal proceedings).

---

[11]  A review of State law regarding filing deadlines for direct appeals reveals that, currently, the deadlines for direct appeals vary in 49 States between 20 and 90 days after entry of a final judgment or order.

[12]  Under the current criminal procedure rules in many jurisdictions, within a short period of time after conviction, a defendant may seek some form of late-filed appeal beyond the initial period for filing a direct appeal as of right.  *See, e.g.*, Ariz. R. Crim. P. 31.3 (allowing the Arizona appellate courts to suspend the 20-day filing deadline for good cause shown); N.J. Ct. R. 2:4-4(a) (allowing the New Jersey appellate courts to extend the 45-day filing deadline by not more than 30 days upon a showing of good cause and the absence of prejudice); Mass. R. App. P. 4(c) (allowing Massachusetts lower courts to extend the 30-day time to file a notice of appeal upon a "showing of excusable neglect"), 14(b) (giving appellate courts authority to "enlarge the time" for filing an appeal to 1 year "for good cause shown"); Tenn. R. App. P. 4(a) (stating that "in all criminal cases the 'notice of appeal' document is not jurisdictional and the timely filing of such document may be waived in the interest of justice").  Eighteen jurisdictions provide for an automatic waiver of the appeal if the defendant fails to timely file a direct appeal of a criminal conviction.

Appeals, including direct appeals, and collateral attacks that do not relate to the underlying merits of the conviction will not be given effect to eliminate the finality of the conviction. Such appeals include those that relate only to the alien's sentence or that seek to reduce the charges, to ameliorate the conviction for rehabilitative purposes, or to alleviate immigration hardships, and any other appeals that do not challenge the merits of the conviction. *See Matter of Roldan*, 22 I&N Dec. 512, 521–24 (BIA 1999) (holding that under the statutory definition of a "conviction" in section 101(a)(48)(A) of the Act, no effect is to be given in immigration proceedings to a State action that purports to expunge, dismiss, cancel, vacate, discharge, or otherwise remove a guilty plea or other record of guilt or conviction by operation of a State rehabilitative statute); *see also Matter of Pickering*, 23 I&N Dec. at 624–25 (holding that a conviction set aside for reasons solely related to post-conviction events such as rehabilitation or immigration hardships will remain a conviction for immigration purposes).[13]

In this case, the respondent submitted evidence indicating that he filed a motion for an extension of the appeal deadline and that the motion was granted and the appeal was permitted by the New York appellate court.[14] Under these circumstances, we will remand this case to the Immigration Judge to consider the status of the pending appeal and its basis and to determine whether a continuance may be appropriate. *See Matter of L-A-B-R-*, 27 I&N Dec. 405 (A.G. 2018). In this regard, the respondent and the DHS should be given an opportunity to present any additional documentary and testimonial evidence they wish to offer in assisting the Immigration Judge.

Accordingly, the appeal from the Immigration Judge's determination that the respondent is removable under section 237(a)(2)(A)(i) of the Act and from his denial of the respondent's application for cancellation of removal under section 240A(a) of the Act will be dismissed. The respondent's motion to remand based on new evidence will be granted.

---

[13] The rationale underlying this position is that such challenges do not comport with congressional intent regarding the definition of a "conviction" in the Act. *See Matter of Pickering*, 23 I&N Dec. at 623; *Matter of Roldan*, 22 I&N Dec. at 521.

[14] The respondent submitted this motion pursuant to section 460.30 of the New York Criminal Procedure Law, which sets forth the circumstances under which appeals filed beyond the deadline proscribed in section 460.10 will be granted and treated as direct appeals as of right. These circumstances include improper conduct by a public servant or the defendant's attorney, the death or disability of the attorney, or the inability of an incarcerated defendant to communicate with an attorney regarding the appeal through no lack of due diligence or fault of the attorney or the defendant.

**ORDER:**  The appeal is dismissed in part and the motion to remand is granted.

**FURTHER ORDER:**  The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

*CONCURRING AND DISSENTING OPINION*:  Garry D. Malphrus, Board Member

I concur with the majority's determination that the respondent is removable as charged under section 237(a)(2)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(i) (2012), as an alien convicted of a crime involving moral turpitude.  However, I would dismiss the appeal and not remand because I cannot agree with the majority's treatment of the finality issue.  The plain language of the definition of the term "conviction" at section 101(a)(48)(A) of the Act, 8 U.S.C. § 1101(a)(48)(A) (2012), does not require that appeals be exhausted or waived for a conviction to be final for immigration purposes.

I agree with the majority that, prior to the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"), the Board and Federal courts had long held that a conviction only became final for immigration purposes once direct appellate review had been exhausted or waived.  *See Matter of Ozkok*, 19 I&N Dec. 546, 552 n.7 (BIA 1988); *see also Matter of Polanco*, 20 I&N Dec. 894, 895–96 (BIA 1994) (collecting cases).  However, as part of the IIRIRA, Congress for the first time created a statutory definition of the term "conviction."  IIRIRA § 322(a)(1), 110 Stat. at 3009-628 to 3009-629.  Specifically, the Act provides that the "term 'conviction' means, with respect to an alien, a formal judgment of guilt of the alien entered by a court."  Section 101(a)(48)(A) of the Act.[1]

We have a duty to follow the plain and unambiguous language of the statute, and section 101(a)(48)(A) is not ambiguous.  *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) ("If the statute is clear and unambiguous 'that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" (citation omitted)).  The part of the definition at issue here only requires "a formal judgment of guilt . . . entered by a court."  Section

---

[1]  The remaining portion of this definition, which pertains to circumstances where an "adjudication of guilt has been withheld," is inapplicable here.  *See* section 101(a)(48)(A) of the Act.

101(a)(48)(A) of the Act. The statute requires a "formal" judgment, not a "final" judgment, and it makes no reference to a conviction being "final."[2] In addition, the use of the term "conviction" in itself does not implicitly denote the existence of such a requirement. *See Deal v. United States*, 508 U.S. 129, 131 (1993) ("[T]he word 'conviction' can mean either the finding of guilt or the entry of a final judgment on that finding."). Thus, in looking to the plain language of the statute, there is simply no requirement that all appeals must be exhausted or waived before a conviction is final for immigration purposes. *See Planes v. Holder*, 652 F.3d 991, 996–97 (9th Cir. 2011).[3]

The majority states that Congress did not intend to alter the judicial and administrative interpretations regarding the finality of a conviction when it adopted a definition of a "conviction" for the first time in the Act. However, the plain language of section 101(a)(48)(A) evidences Congress' intent. Although there is a general rule of statutory construction that Congress intends to incorporate well-settled judicial and administrative interpretations into a statute when it reenacts an *existing* statute without changes, *see, e.g.*, *Bragdon v. Abbott*, 524 U.S. 624, 644–45 (1998), that rule is not applicable here. In adding section 101(a)(48)(A) to the Act, Congress was not reenacting an existing statute. Instead, it was adopting a definition of "conviction" for the first time.

The majority cites to *Alaska v. Native Village of Venetie Tribal Government*, 522 U.S. 520 (1998), to support its view that this rule should be applied to judicial interpretations when Congress adopts a definition for the first time. However, that case involved a situation far different from the one before us. The legislative history of the statute at issue there explicitly stated that Congress intended to adopt the Supreme Court's definition of the term "Indian country" verbatim. *Id.* at 530 (stating that the statute's

---

[2] In the Federal criminal context, "[t]he sentence is the judgment," and thus a "formal judgment of guilt" is entered at the time a court imposes a sentence. *Burton v. Stewart*, 549 U.S. 147, 156 (2007) (per curiam) (citation omitted); *Johnson v. United States*, 623 F.3d 41, 45 (2d Cir. 2010) (noting that the terms "sentence" and "judgment" "are often used interchangeably"); *Black's Law Dictionary* (10th ed. 2014) (defining "sentence" as "[t]he judgment that a court formally pronounces after finding a criminal defendant guilty; . . . [a]lso termed *judgment of conviction*"). Thus, Congress' use of the term "formal judgment" in section 101(a)(48)(A) indicates that it intended such a judgment to be a "conviction" for immigration purposes, even if it had not attained finality.

[3] It is significant, moreover, that Congress defined the term "conviction" by saying what it "means," rather than what it "includes." Unlike the term "includes," which "is usually a term of enlargement," the word "means" limits the scope of a statutory definition. *Burgess v. United States*, 553 U.S. 124, 131 n.3 (2008); *see also Matter of Cardenas Abreu*, 24 I&N Dec. 795, 805 (BIA 2009) (en banc) (Pauley, concurring), *vacated*, 378 F. App'x 59 (2d Cir. 2010).

435

"definition of Indian country is based on [the] latest construction of the term by the United States Supreme Court" (citation omitted) (internal quotation mark omitted)).

In our case, the pertinent legislative history is silent regarding finality. Furthermore, Congress did not adopt those prior interpretations verbatim. When Congress defined the term "conviction" for the first time in the Act, it significantly modified the Board's definition in *Matter of Ozkok*, 19 I&N Dec. at 551–52, rejecting that case's approach to deferred adjudications. *See Matter of Cardenas Abreu*, 24 I&N Dec. 795, 805 (BIA 2009) (en banc) (Pauley, concurring), *vacated*, 378 F. App'x 59 (2d Cir. 2010). We cannot assume that Congress deferred to our interpretation when it enacted section 101(a)(48)(A). Nor may we read a finality requirement into a provision that is not there. *See Contreras-Bocanegra v. Holder*, 678 F.3d 811, 819 (10th Cir. 2012) ("When Congress legislates on a clean slate, it need not explicitly abrogate every related policy put in place by an agency.").[4]

Moreover, looking to the "broader context of the statute as a whole," *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997), other sections of the Act indicate that the majority's approach is not the correct interpretation. Although Congress did not use the term "final" in section 101(a)(48)(A) of the Act, it has included that term in other provisions of the Act. For example, Congress provided for the removal of nonviolent offenders who are imprisoned and subject to a "*final* conviction" in section 241(a)(4)(B)(i) of the Act, 8 U.S.C. § 1231(a)(4)(B)(i) (2012) (emphasis added). It likewise

---

[4] This situation is analogous to how the circuit courts have determined that Congress abrogated the departure bar regulations at 8 C.F.R. §§ 1003.2(d) and 1003.23(b)(1) (2018)—namely, by enacting new legislation that conflicted with the prior administrative interpretation. Specifically, when Congress enacted section 240(c)(7)(A) of the Act, 8 U.S.C. § 1229a(c)(7)(A) (2012), it adopted language from prior regulations that gave aliens the right to file one motion to reopen, but it declined to adopt language from those regulations indicating that a motion was automatically withdrawn upon an alien's departure from the United States. After concluding that the departure bar regulations conflict with the plain language of the newly enacted section 240(c)(7)(A), most circuit courts have held that the administrative interpretation embodied in the prior regulations did not survive the enactment of the IIRIRA. *See Toor v. Lynch*, 789 F.3d 1055, 1061 (9th Cir. 2015) ("Congress was undoubtedly aware of the pre-existing regulatory post-departure bar. . . . [T]herefore, the 'proper inference' is that Congress considered whether to bar motions to reopen . . . from noncitizens who had departed the United States, and chose not to do so." (citation omitted) (internal quotation mark omitted)); *Santana v. Holder*, 731 F.3d 50, 58–59 (1st Cir. 2013); *Garcia-Carias v. Holder*, 697 F.3d 257, 264 (5th Cir. 2012); *Lin v. U.S. Att'y Gen.*, 681 F.3d 1236, 1241 (11th Cir. 2012); *Contreras-Bocanegra*, 678 F.3d at 819; *Prestol Espinal v. Att'y Gen.*, 653 F.3d 213, 217–18 (3d Cir. 2011); *William v. Gonzales*, 499 F.3d 329, 333–34 (4th Cir. 2007). If the departure bar did not survive the enactment of the IIRIRA, it is not reasonable to conclude that our prior interpretation regarding finality survived the enactment of section 101(a)(48)(A) of the Act.

provided at section 237(a)(2)(D) that an "alien who at any time has been convicted (*the judgment on such conviction becoming final*) of, or has been so convicted of a conspiracy or attempt to violate" certain national security statutes is deportable. (Emphasis added.) Additionally, an alien is ineligible for asylum and withholding of removal under the Act if that alien is "convicted by a *final judgment* of a particularly serious crime." Sections 208(b)(2)(A)(ii), 241(b)(3)(B)(ii) of the Act, 8 U.S.C. §§ 1158(b)(2)(A)(ii), 1231(b)(3)(B)(ii) (2012) (emphasis added).

The inclusion of the term "final" in the above provisions, and its exclusion from section 101(a)(48)(A), indicates that Congress did not intend for a "conviction" to be final before it has immigration consequences. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987) (alteration in original) (citation omitted); *see also Jama v. ICE*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest."); *Matter of M-H-Z-*, 26 I&N Dec. 757, 761 (BIA 2016). The majority's contrary conclusion—that the inclusion of the word "final" in other sections of the Act to describe a "conviction," and its exclusion from section 101(a)(48)(A), implies that the latter contains a finality requirement—turns this long-standing canon of statutory interpretation on its head.[5]

The majority effectively concedes that its result is not based on the plain language of the statute. Rather, it regards congressional silence, legislative history and prior judicial interpretations as providing support for its finding that the statute is ambiguous. However, based on long-standing principles of statutory construction, we have a duty to first assess whether the language of the statute is clear and unambiguous, and if it is, we must follow that language as long as it would not lead to an absurd or bizarre result. *FDA*

---

[5] Further, although the regulations do not contain a provision that addresses the term "conviction" in the context of removal proceedings under section 240 of the Act, they support the argument that finality is not required in our case. For instance, by regulation, an alien who is subject to expedited removal must have been "convicted (as defined in section 101(a)(48)(A) . . .) of an aggravated felony *and such conviction has become final*." 8 C.F.R. § 1238.1(b)(iii) (2018) (emphasis added). "If the definition of a 'conviction' enacted by the IIRIRA bore the understanding . . . that a conviction must have attained finality, it would have been unnecessary for the regulation to specify that the conviction must have become final." *Matter of Cardenas Abreu*, 24 I&N Dec. at 807 (Pauley, concurring).

*v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000); *Demarest v. Manspeaker*, 498 U.S. 184, 191 (1991).[6] Section 101(a)(48)(A) is unambiguous on its face, and no circuit court has held that applying the plain and unambiguous language of that provision would lead to absurd results. *See, e.g.*, *Planes*, 652 F.3d at 996 (collecting cases holding that the plain language of section 101(a)(48)(A) "requires only that the trial court enter a formal judgment of guilt, without any requirement that all direct appeals be exhausted or waived").

In this case, no absurd results would ensue from applying the plain language of this provision. The respondent, who was detained below and remains detained on appeal, was ordered removed, based in part on a conviction that was clearly final during his removal hearing. While his case was pending before us on appeal, he filed a motion for a late-reinstated appeal in State court, which was granted. Also, contrary to the majority's implication, no fundamental unfairness would ensue. If the respondent's conviction is reversed by the State court, it will no longer be valid for immigration purposes. *See, e.g.*, *Matter of Marquez Conde*, 27 I&N Dec. 251, 255 (BIA 2018) (holding that "convictions that have been vacated based on procedural and substantive defects in the underlying criminal proceeding [are] no longer valid for immigration purposes"). Thus, any unfairness that may ensue from ordering the respondent removed based on his conviction now could be remedied if he successfully overturns his conviction before the State court. This is one reason why the Department of Homeland Security ("DHS") might choose for policy or prudential reasons not to proceed with removal proceedings until direct appeals have been exhausted.

The approach that I would take is consistent with the clear majority of circuit courts that have addressed finality in the immigration context. Several courts have expressly held that the judicially created finality requirement has been superseded by the IIRIRA, based on the plain language of the Act, and that a conviction exists for immigration purposes, even if a direct appeal is pending in criminal court. *See Planes*, 652 F.3d at 994–96; *United States v. Saenz-Gomez*, 472 F.3d 791, 794 (10th Cir. 2007) (holding that "the literal language of [section 101(a)(48)(A)] controls" the meaning of "conviction" and declining to read a finality requirement into that provision "[b]ecause the plain language of [the statute] is clear and does not lead to an irrational result"); *Montenegro v. Ashcroft*, 355 F.3d 1035, 1037 (7th Cir. 2004) (per

---

[6] Notably, the facts of *Demarest* are supportive of the reasoning and result of this dissent. In that case, the Supreme Court applied the plain language of the statute to find that State prisoners who testified at Federal trials pursuant to a writ of habeas corpus in 18 U.S.C. § 1821 (1988) were entitled to witness fees, rejecting long-standing administrative and judicial interpretations to the contrary.

curiam) (holding that the "IIRIRA eliminated the finality requirement for a conviction").[7]

The majority attempts to distinguish this authority by stating that these decisions could have been decided on narrower grounds. However, circuit courts, as well as the Board, render published decisions where the holding is arguably broader than necessary to resolve the case at hand, and even where that is true, it does not turn a holding into dicta. Moreover, the distinctions cited by the majority have no bearing on the express holdings in those decisions that the finality requirement did not survive the enactment of the IIRIRA and that a conviction exists for immigration purposes, even if it is pending on direct appeal.

Some circuits have indicated in dicta that the finality rule did not survive the enactment of the IIRIRA. *See Moosa v. INS*, 171 F.3d 994, 1009 (5th Cir. 1999) ("There is no indication that the finality requirement imposed . . . prior to 1996 . . . survives the new definition of 'conviction' found in IIRIRA . . . ."); *see also Griffiths v. INS*, 243 F.3d 45, 49–51 (1st Cir. 2001) (reserving the question but citing *Moosa* approvingly). Most relevant here, the United States Court of Appeals for the Second Circuit, in whose jurisdiction this case arises, has stated in dicta that the IIRIRA "eliminate[d] the requirement that all direct appeals be exhausted or waived before a conviction is considered final under the statute." *Puello v. Bureau of Citizen. & Immigr. Servs.*, 511 F.3d 324, 332 (2d Cir. 2007). *But see Walcott v. Chertoff*, 517 F.3d 149, 154 (2d Cir. 2008) (accepting the DHS's argument that an alien's "March 1996 conviction was not deemed final for immigration purposes until July 1, 1998, when direct appellate review of it was exhausted").[8] The majority attempts to distinguish these cases, but the distinctions it draws are irrelevant to how these courts treated the finality issue.[9] The majority's creative discussion of the circuit court decisions that have addressed the

---

[7] In these circuits, the majority's interpretation of the term "conviction" in section 101(a)(48)(A) will not be entitled to deference because these circuits relied on the plain language of the statute. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005).

[8] The majority notes that a divided panel of the Second Circuit recently stated in an unpublished decision that the question "remains open" whether the finality requirement continues to apply after the enactment of the IIRIRA and remanded for us to consider the issue. *Mohamed v. Sessions*, 727 F. App'x 32, 34 (2d Cir. 2018). By contrast, the dissent would not have remanded and would have held that the plain language of section 101(a)(48)(A) eliminated the finality requirement. *Id.* at 34–35 (Sullivan, J., dissenting).

[9] The majority cites to *United States v. Garcia-Echaverria*, 374 F.3d 440 (6th Cir. 2004), as an example of how the Sixth Circuit has preserved the finality requirement. Although the Sixth Circuit concluded in dicta that convictions must be "final," it based this conclusion on the law prior to the IIRIRA, rather than the statutory definition of a "conviction" at section 101(a)(48)(A). *Id.* at 445.

finality issue gives the appearance that there is much more uncertainty within circuits on this issue than there actually is.

The only circuit that has held that the finality requirement survived the enactment of the IIRIRA is the Third Circuit. *See Orabi v. U.S. Att'y Gen.*, 738 F.3d 535, 540–41 (3d Cir. 2014). There the court relied primarily on legislative history discussing Congress' attempt to modify the Board's approach to deferred adjudications. However, as noted, this legislative history is silent with respect to the issue before us. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 862 (1984) (declining to find that legislative history illuminates congressional intent where that history is either silent or ambiguous on the issue); *see also Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) ("Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms."). For this reason, the legislative history does not resolve whether section 101(a)(48)(A) contains a finality requirement.

Based on the plain language of the Act and the clear weight of authority in the circuit courts, I would conclude that "the first definition of 'conviction' in § [101](a)(48)(A) requires only that the trial court enter a formal judgment of guilt, without any requirement that all direct appeals be exhausted or waived." *Planes*, 652 F.3d at 996. The majority errs by invoking congressional silence to convert the otherwise plain language at issue here into statutory ambiguity, thereby giving us license to resolve the ambiguity in the manner that we think is best. "Regardless of our view on the wisdom or efficacy of Congress's policy choices, we are not free to read in additional elements where the legislature has declined to include them." *Id.* (citing *Jones v. Bock*, 549 U.S. 199, 216–17 (2007)).

I therefore respectfully dissent from the majority's decision to remand this case for further proceedings. I would deny the respondent's motion to remand because the new evidence does not indicate that his conviction has been overturned or vacated, and he remains ineligible for relief under former section 212(c) of the Act, 8 U.S.C. § 1182(c) (1994). *See Matter of Coelho*, 20 I&N Dec. 464 (BIA 1992).