# Matter of D-L-S-, Respondent

*Decided June 14, 2022*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

A respondent who is subject to a deferred adjudication that satisfies the elements of sections 101(a)(48)(A)(i) and (ii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(48)(A)(i) and (ii) (2018), has been "convicted by a final judgment" within the meaning of the particularly serious crime bar under section 241(b)(3)(B)(ii) of the INA, 8 U.S.C. § 1231(b)(3)(B)(ii) (2018).

FOR THE RESPONDENT: Virlenys H. Palma, Esquire, Homestead, Florida

FOR THE DEPARTMENT OF HOMELAND SECURITY: Gizelle Rodriguez, Assistant Chief Counsel

BEFORE: Board Panel: WILSON and BAIRD, Appellate Immigration Judges; Concurring Opinion: GREER, Appellate Immigration Judge.

WILSON, Appellate Immigration Judge:

This case was last before us on October 28, 2016, when we dismissed the respondent's appeal from the Immigration Judge's decision denying his application for withholding of removal under section 241(b)(3)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3)(A) (2012), and protection under the regulations implementing the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994). This case is presently before us pursuant to a March 30, 2017, order from the United States Court of Appeals for the Eleventh Circuit granting the Government's unopposed motion to remand, which asked us to further consider the respondent's eligibility for withholding of removal under the INA.[1] The parties have filed briefs on remand.[2] The appeal will again be dismissed.

---

[1] The Board was unaware of the Eleventh Circuit's remand order until April 2019.

[2] The remand order did not ask us to reconsider our conclusion that the respondent had not established his eligibility for protection under the Convention Against Torture. We incorporate by reference and readopt our prior decision affirming the denial of protection under the Convention Against Torture.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The respondent is a native and citizen of Mexico who last entered the United States without inspection. In 1999, he pled nolo contendere to felony battery under section 784.041 of the Florida Statutes. The respondent received 5 years of probation, and adjudication was deferred. In light of the respondent's subsequent criminal conduct, this order was later modified to include anger management evaluations and a directive to follow prescribed recommendations.

The Department of Homeland Security placed the respondent in removal proceedings. The respondent conceded that he was removable as charged and applied for withholding of removal under section 241(b)(3)(A) of the INA, 8 U.S.C. § 1231(b)(3)(A), and protection under the Convention Against Torture.[3] The Immigration Judge pretermitted the respondent's application for withholding of removal after she concluded that the respondent's deferred adjudication of felony battery under Florida law was a conviction for a particularly serious crime pursuant to section 241(b)(3)(B)(ii) of the INA, 8 U.S.C. § 1231(b)(3)(B)(ii). She denied the respondent's request for protection under the Convention Against Torture after finding that he did not face a clear probability of future torture in Mexico. We dismissed the respondent's appeal from the Immigration Judge's decision.

The respondent filed a petition for review, and the Eleventh Circuit granted the Government's unopposed motion to vacate our decision and remanded the case to us for further proceedings addressing the issues outlined in the Government's motion. In its motion, the Government sought remand so that we could further consider whether the respondent was convicted "by a final judgment" of a particularly serious crime within the meaning of section 241(b)(3)(B)(ii) based on his deferred adjudication under Florida law. The Government also requested further consideration of whether felony battery under Florida law is a particularly serious crime in light of circuit and State case law either by its elements or under the facts and circumstances of the respondent's conduct.

We review de novo whether the statutory phrase "convicted by a final judgment" in the particularly serious crime bar at section 241(b)(3)(B)(ii) of the INA, 8 U.S.C. § 1231(b)(3)(B)(ii) (2018), encompasses the respondent's deferred adjudication for felony battery under Florida law. *See* 8 C.F.R. § 1003.1(d)(3)(ii) (2021). If we conclude that it does, we must then consider whether his Florida conviction for felony battery is for a "particularly serious crime." Because the respondent's offense is not a per se particularly serious

---

[3] The respondent conceded below that his application for asylum was untimely. *See* INA § 208(a)(2)(B), (D), 8 U.S.C. § 1158(a)(2)(B), (D) (2012).

crime under section 241(b)(3)(B),[4] we "retain[] discretion to determine on a case-by-case basis whether [his] offense constituted a particularly serious crime" under this provision. *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010) (per curiam); *see also Matter of B-Z-R-*, 28 I&N Dec. 563, 563 (A.G. 2022). The respondent bears the burden of proof to establish that he is not subject to the particularly serious crime bar to withholding of removal. *See* INA § 240(c)(4)(A)(i), 8 U.S.C. § 1229a(c)(4)(A)(i) (2018); 8 C.F.R. § 1240.8(d) (2021); *see also Pereida v. Wilkinson*, 141 S. Ct. 754, 760 (2021).

## II. ANALYSIS

In interpreting section 241(b)(3)(B)(ii), "[o]ur analysis begins with the language of the statute." *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1569 (2017) (citation omitted). To determine Congress' intentions in enacting the particularly serious crime bar, "we may consider the overall 'object and policy' of the law and examine the legislative history." *Matter of J.M. Acosta*, 27 I&N Dec. 420, 426 (BIA 2018) (citations omitted). We must be especially attuned to Congress' intent in enacting section 241(b)(3)(B)(ii), which, as noted below, was added to the INA to bring the United States into conformance with its obligations under international law, because international law "does not afford [the] respondent any rights beyond what he is afforded under the federal immigration laws." *Matter of D-J-*, 23 I&N Dec. 572, 584 n.8 (A.G. 2003).

### A. Statutory Context

The respondent is ineligible for withholding of removal under the INA if, "having been *convicted by a final judgment* of a particularly serious crime, [he] is a danger to the community of the United States." INA § 241(b)(3)(B)(ii), 8 U.S.C. § 1231(b)(3)(B)(ii) (emphasis added). Although not applicable here, section 208(b)(2)(A)(ii) of the INA, 8 U.S.C. § 1158(b)(2)(A)(ii) (2018), likewise renders an applicant ineligible for asylum if, "having been *convicted by a final judgment* of a particularly serious crime, [he or she] constitutes a danger to the community of the United States." (Emphasis added.) For our purposes, it is significant that both provisions contain the identical phrase "convicted by a final judgment," and

---

[4] For purposes of withholding of removal, an aggravated felony is a per se particularly serious crime if the respondent was sentenced to an aggregate term of imprisonment of at least 5 years. INA § 241(b)(3)(B), 8 U.S.C. § 1231(b)(3)(B). Although not relevant here, any aggravated felony is a per se particularly serious crime for purposes of asylum. INA § 208(b)(2)(B)(i), 8 U.S.C. § 1158(b)(2)(B)(i).

we believe Congress intended both phrases to have a consistent meaning. *See Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1812 (2019) ("[W]hen Congress uses a term in multiple places within a single statute, the term bears a consistent meaning throughout.").

Congress first added the phrase "convicted by a final judgment of a particularly serious crime," to the INA through section 203(e) of the Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102, 107 (codified at former section 243(h)(2)(B) of the INA, 8 U.S.C. § 1253(h)(2)(B) (Supp. IV 1980), which was later designated as section 241(b)(3)(B)(ii)). Congress adopted this language verbatim from the second paragraph of Article 33 of the 1951 United Nations Convention Relating to the Status of Refugees, *adopted* July 28, 1951, 19 U.S.T. 6259, 189 U.N.T.S. 150 (entered into force Apr. 22, 1954) ("Convention"). [5] The United States is bound to the substantive provisions of Articles 2 through 34 of the Convention by its accession in 1968 to the United Nations Protocol Relating to the Status of Refugees, *opened for signature* Jan. 31, 1967, 19 U.S.T. 6223, 606 U.N.T.S. 267 (entered into force Oct. 4, 1967; for the United States Nov. 1, 1968) ("Protocol"). It is well established that Congress enacted the Refugee Act of 1980 to "bring United States refugee law into conformance with the country's obligations under the Protocol." *Matter of Q-T-M-T-*, 21 I&N Dec. 639, 645 (BIA 1996).

Although Congress has amended the scope of the particularly serious crime bar several times in both the asylum and withholding of removal contexts, the phrase "convicted by a final judgment" has remained unchanged since it was added to the INA. *See Matter of L-S-*, 22 I&N Dec. 645, 649–50 (BIA 1999) (reviewing the legislative history of the particularly serious crime bar). In resolving the meaning of section 241(b)(3)(B)(ii), we therefore look to the respective meanings of the phrases "conviction" and "final judgment."

### 1. "Conviction"

This Board had previously defined the term "conviction" for immigration purposes in *Matter of Ozkok*, 19 I&N Dec. 546, 551–52 (BIA 1988), *superseded by statute*, Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, § 322(a)(1), 110 Stat. 3009-546, 3009-628 (codified at INA § 101(a)(48)(A), 8 U.S.C. § 1101(a)(48)(A) (Supp. II 1996)). Under that definition, a person was

---

[5] This paragraph of the Convention states, in relevant part, that a refugee will not be expelled or returned to a country where his or her life or freedom would be threatened on account of a protected ground, unless he or she has "been convicted by a final judgment of a particularly serious crime." Convention, Art. 33(2).

convicted for immigration purposes if a court either adjudicated the person guilty and entered "a formal judgment," or entered a deferred adjudication of guilt. *Id.* at 551. In the context of deferred adjudications, we stated that a person had sustained a "conviction" for immigration purposes where:

> (1) a judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilty;
> (2) the judge has ordered some form of punishment, penalty, or restraint on the person's liberty to be imposed (including but not limited to incarceration, probation, a fine or restitution, or community-based sanctions such as a rehabilitation program, a work-release or study-release program, revocation or suspension of a driver's license, deprivation of nonessential activities or privileges, or community service); and
> (3) a judgment or adjudication of guilt may be entered if the person violates the terms of his probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding the person's guilt or innocence of the original charge.

*Id.* at 551–52.

Following *Matter of Ozkok*, Congress added section 101(a)(48)(A) to the INA to provide a uniform definition of "conviction" for immigration purposes that "eliminate[d] the need to refer to the vagaries of the states' ameliorative statutes in order to determine if [a respondent] has been convicted." *Matter of Roldan*, 22 I&N Dec. 512, 518 (BIA 1999); *see also Herrera-Inirio v. INS*, 208 F.3d 299, 305 (1st Cir. 2000) (noting "the crazy quilt of anomalous results that flowed from widely disparate state rehabilitative and diversionary arrangements," and stating that Congress enacted section 101(a)(48)(A) "to produce . . . uniformity").

This provision defines "conviction" as meaning

> with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—
> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

INA § 101(a)(48)(A), 8 U.S.C. § 1101(a)(48)(A).

While this definition is largely consistent with the one we articulated in *Matter of Ozkok*, Congress eliminated the third prong "of the *Ozkok* rule that exempted criminal aliens with a deferred adjudication from the immigration consequences of a conviction if they retained a right to pursue further proceedings to contest their guilt at an unknown time in the future." *Matter of Cardenas Abreu*, 24 I&N Dec. 795, 799–800 (BIA 2009). "In so doing,

Congress reflected its concern about the problems presented by the indeterminate nature of such proceedings and clearly expressed its disfavor with aliens' pursuit of avenues available under State laws to allow them to delay indefinitely the conclusion of immigration proceedings." *Id.* at 800.

Thus, Congress clearly intended for a respondent subject to a deferred adjudication to be regarded as "convicted" under sections 101(a)(48)(A)(i) and (ii), "based on an initial finding or admission of guilt coupled with the imposition of some punishment, even in a state where further proceedings relating to the alien's actual guilt or innocence may be required upon his violation of probation in order for him to be considered convicted under the state law." *Matter of Roldan*, 22 I&N Dec. at 518; *see also Matter of Punu*, 22 I&N Dec. 224, 228 (BIA 1998) (concluding that a deferred adjudication under Texas law was a "conviction" for immigration purposes, even though further appellate review remained possible, because "Congress has specifically explained that it intended to obviate the need to inquire into" such a possibility).

## 2. "Final Judgment"

Unlike the term "conviction," the INA does not define the term "final judgment," nor does the plain language of section 241(b)(3)(B)(ii) resolve whether it applies to deferred adjudications that otherwise satisfy the definition of "conviction" under section 101(a)(48)(A). Because the statute is silent in this regard, we conclude that it is ambiguous, and it is our duty to define "final judgment" in a reasonable manner. *See Matter of J.M. Acosta*, 27 I&N Dec. at 427 ("[S]ilence in the statutory scheme may create ambiguity.").

Although the phrase "final judgment" is derived from the Convention, it had a well-established meaning under Federal law when Congress added it to the INA. *See Matter of T-C-A-*, 28 I&N Dec. 472, 474 (BIA 2022) (resolving "a dispute over a statute's meaning" by "afford[ing] the law's terms their ordinary meaning at the time Congress adopted them" (citation omitted)). The Supreme Court of the United States has stated that "[f]inal judgment in a criminal case means sentence. The sentence is the judgment." *Berman v. United States*, 302 U.S. 211, 212 (1937); *see also id.* at 212–13 (stating that a judgment is final in the criminal context "'when it terminates the litigation between the parties on the merits' and 'leaves nothing to be done but to enforce by execution what has been determined'" (citation omitted)). The Court additionally explained that a judgment remains final in the criminal context, even if "execution [of the sentence] was suspended." *Id.* at 212. Thus, *Berman*'s interpretation of "final judgment" encompasses convictions where a sentence was imposed but later suspended. *See id.*

(concluding that a sentence to imprisonment was a "final judgment" where "[e]xecution of the sentence was suspended and [the defendant] was placed on probation").

This well-established definition of "final judgment" in Federal law provides vital insight into that phrase's meaning when Congress added the particularly serious crime bar to the INA. Accordingly, we conclude that a conviction is "by final judgment" under section 241(b)(3)(B)(ii) once a sentence is imposed, even if the sentence is later withheld, deferred, or suspended.[6]

This interpretation of "final judgment" is consistent with the INA's definition of "conviction" for deferred adjudications. *See* INA § 101(a)(48)(A)(i), (ii), 8 U.S.C. § 1101(a)(48)(A)(i), (ii). We see no meaningful distinction between *Berman*'s discussion of the imposition of "sentence"—which the Court equated to a "final judgment"—and the INA's requirement for deferred adjudications that a "judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed." INA § 101(a)(48)(A)(ii), 8 U.S.C. § 1101(a)(48)(A)(ii); *see also Matter of Roldan*, 22 I&N Dec. at 518 (stating section 101(a)(48)(A)(ii) requires "the imposition of some punishment"). A judge's order under section 101(a)(48)(A)(ii) "'terminates the litigation between the parties on the merits' and 'leaves nothing to be done but to enforce by execution what has been determined.'" *Berman*, 302 U.S. at 213 (citation omitted). Therefore, once a deferred adjudication satisfies the elements of sections 101(a)(48)(A)(i) and (ii), it will necessarily qualify as a conviction "by a final judgment" within the meaning of section 241(b)(3)(B)(ii) of the INA, 8 U.S.C. § 1231(b)(3)(B)(ii).[7]

---

[6] We emphasize that "final judgment" is distinct from the concept of finality we discussed in *Matter of J.M. Acosta*, 27 I&N Dec. 420. In that case, we held that a "formal judgment of guilt" only attains sufficient finality for immigration purposes once "the right to direct appellate review on the merits of the conviction has been exhausted or waived." *Id.* at 432. We did not then, and do not now, apply this finality requirement to deferred adjudications. In contrast to the finality rule discussed in *Matter of J.M. Acosta*, a "final judgment" under Federal law does not require waiver or exhaustion of appellate review because a "final judgment" is generally a prerequisite of Federal appellate jurisdiction. *See* 28 U.S.C. § 1291 (2018) (providing that the Federal courts of appeals "shall have jurisdiction of appeals from all final decisions of the district courts"); *see also Abney v. United States*, 431 U.S. 651, 658 (1977) (noting that "a final judgment always is a final decision" under § 1291 (citation omitted)).

[7] Our interpretation does not render the phrase "final judgment" in section 241(b)(3)(B)(ii) mere surplusage. We have given full effect to that phrase but found that Congress intended it to "substantially overlap" with section 101(a)(48)(A)(ii). *Agnew v. Gov't of the D.C.*, 920 F.3d 49, 57 (D.C. Cir. 2019) ("That [statutory] terms . . . substantially overlap does not contravene the surplusage canon . . . .").

This reading of "final judgment" provides one uniform standard and avoids "the need to refer to the vagaries" of State law in determining whether a respondent has been convicted by a final judgment. *Matter of Roldan*, 22 I&N Dec. at 518. Regardless of whether State law labels a judge's order imposing some form of punishment, penalty, or restraint on liberty following a deferred adjudication a "sentence," "final judgment," or "final order," it will qualify as a "final judgment" for purposes of the particularly serious crime bar, so long as the requirements of sections 101(a)(48)(A)(i) and (ii) are met. *See Matter of German Santos*, 28 I&N Dec. 552, 557 (BIA 2022) (stating that whether immigration consequences flow from a State conviction is "a question of federal, not state, law, despite the fact that the predicate offense and its punishment are defined by the law of the State" (citation omitted)).

Finally, there is no indication in the relevant legislative history of the Refugee Act of 1980 that Congress intended the phrase "convicted by a final judgment of a particularly serious crime" to exclude particularly serious crimes resolved through State deferred adjudication procedures. Rather, it added this provision to the INA to bring this country's immigration laws into conformance with the Convention, *see Matter of Q-T-M-T-*, 21 I&N Dec. at 645, and nothing in the Convention indicates that "final judgment" was intended to exclude deferred adjudications. It is not inconsistent for Congress to adopt general language like "final judgment" and later provide a more specific definitional provision (as it did with the definition of "conviction" at section 101(a)(48)(A)), informing our understanding of that language. *Cf. id.* (stating that the Refugee Act of 1980 "established the *basic framework* for current refugee law" (emphasis added)).

We therefore hold that a respondent who is subject to a deferred adjudication that satisfies the elements of sections 101(a)(48)(A)(i) and (ii) of the INA, 8 U.S.C. § 1101(a)(48)(A)(i) and (ii), has been "convicted by a final judgment" within the meaning of the particularly serious crime bar under section 241(b)(3)(B)(ii) of the INA, 8 U.S.C. § 1231(b)(3)(B)(ii). Although this case involves an application for withholding of removal, in light of the canon on consistent usage, our reading of "convicted by a final judgment" applies with equal force to the identical phrase in section 208(b)(2)(A)(ii) of the INA, 8 U.S.C. § 1158(b)(2)(A)(ii), which applies in the asylum context. *See Allina Health Servs.*, 139 S. Ct. at 1812.

### B.  Respondent was "Convicted by a Final Judgment"

At the time of the respondent's offense, in order for a judge to defer adjudication of guilt and order probation under Florida law, a defendant must have been found guilty by the verdict of a jury, entered a plea of guilty or

nolo contendere, or have been found guilty by the court trying the case without a jury. *See* Fla. Stat. Ann. § 948.01(1)–(2) (West 1999); *see also State v. McFadden*, 772 So. 2d 1209, 1211 (Fla. 2000) (discussing deferred adjudications under section 948.01(2)); Fla. R. Crim. P. 3.670 (discussing deferred adjudications after a guilty verdict).[8]

Consistent with these provisions, the respondent pled nolo contendere, was placed on probation, and received deferred adjudication. The respondent's plea of nolo contendere satisfies the elements of section 101(a)(48)(A)(i), and the order of probation is a punishment or restraint within the meaning of section 101(a)(48)(A)(ii). *See, e.g.*, *Matter of Punu*, 22 I&N Dec. at 228 (recognizing "probation as a form of punishment or restraint"). Probation is a form of "sentence" under Federal law and thus a "final judgment."[9] Consequently, the respondent's Florida deferred adjudication qualifies as a "conviction by a final judgment" within the meaning of section 241(b)(3)(B)(ii) of the INA, 8 U.S.C. § 1231(b)(3)(B)(ii). We next turn to whether the respondent's offense qualifies as a "particularly serious crime."

## C. Respondent was Convicted of a "Particularly Serious Crime"

The Eleventh Circuit asked us to clarify on remand our prior conclusion that the respondent's conviction for felony battery under Florida law is one for a particularly serious crime. In its motion to remand, the Government requested that we reconsider our statement in our prior decision that the respondent's offense is "a particularly serious crime based solely on its elements," in light of the Eleventh Circuit's decision in *Lapaix*, 605 F.3d at 1143, which found that Florida aggravated battery was a particularly serious crime based on all the underlying facts and circumstances, and did not address whether it was particularly serious based on its elements. Citing *T.S. v. State*, 965 So. 2d 1288, 1290 (Fla. Dist. Ct. App. 2007), the Government additionally noted that felony battery (unlike aggravated battery) does not require a defendant to intentionally or knowingly cause serious injury to his victim. We now clarify that the respondent's Florida

---

[8] Florida has placed some limits on deferred adjudications. *See* Fla. Stat. Ann. § 775.08435 (West 2021). However, these limitations were enacted after the respondent's deferred adjudication was entered. 2004 Fla. Sess. Law Serv. Ch. 2004-60 (H.B. 869) (enacting section 775.08435). Further, the limitations described in this provision do not appear to apply to the respondent.

[9] Although not dispositive, the Supreme Court of Florida has stated that in the case of deferred adjudications where probation is the sole form of punishment imposed, such a disposition is "a final order" under State law. *Delaney v. State*, 190 So. 2d 578, 580 (Fla. 1966) (per curiam), *overruled on other grounds by Franklin v. State*, 257 So. 2d 21 (Fla. 1971) (per curiam).

felony battery offense is a particular serious crime based on the facts and circumstances underlying his crime.[10]

"On some occasions, we have focused exclusively on the elements of the offense, i.e., the nature of the crime." *Matter of N-A-M-*, 24 I&N Dec. 336, 342 (BIA 2007), *aff'd*, *N-A-M- v. Holder*, 587 F.3d 1052 (10th Cir. 2009). However, we generally examine a variety of factors and have held that once the elements of an offense "potentially bring the offense within the ambit of a particularly serious crime, all reliable information may be considered in making a particularly serious crime determination, including the conviction records and sentencing information, as well as other information outside the confines of a record of conviction." *Id.*; *see also Lapaix*, 605 F.3d at 1143 (stating that, in making a particularly serious crime determination, Immigration Judges "generally consider additional evidence" beyond a statute's elements "and look 'to such factors as the nature of the conviction, the circumstances of the underlying facts of the conviction, [and] the type of sentence imposed'" (citation omitted)).

At all relevant times, a person commits felony battery under Florida law if he or she

> (a)  Actually and intentionally touches or strikes another person against the will of the other; and
> (b)  Causes great bodily harm, permanent disability, or permanent disfigurement.

Fla. Stat. Ann. § 784.041(1) (West 1999). Because this statute defines a crime against persons involving an intentional act that causes "great bodily harm, permanent disability, or permanent disfigurement," its elements potentially bring the offense within the ambit of a particularly serious crime. *See Matter of N-A-M-*, 24 I&N Dec. at 343 ("[C]rimes against persons are more likely to be categorized as particularly serious.").

With regard to the facts and circumstances underlying his battery offense, the respondent testified that he got into an argument with an individual at a gas station. This individual held up an empty beer bottle and signaled that he wanted to hurt the respondent with it. The respondent then picked up a piece of glass off the ground, attacked the individual, and used the piece of glass to cut this person's chest. He argues on appeal that he attacked his victim in self-defense because he feared that he would be harmed.

---

[10]  Because we conclude that the respondent's crime is particularly serious under the facts and circumstances, we need not decide whether felony battery under Florida law is a particularly serious crime solely based on its elements. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

The Immigration Judge did not clearly err when she declined to accept the respondent's assertion that he was acting in self-defense because the record plausibly supports the Immigration Judge's conclusion that the respondent was the aggressor and engaged in violent and dangerous criminal behavior against his victim. *See Matter of D-R-*, 25 I&N Dec. 445, 455 (BIA 2011) ("An Immigration Judge is not required to accept a respondent's assertions, even if plausible, where there are other permissible views of the evidence based on the record."), *remanded on other grounds*, *Radojkovic v. Holder*, 599 F. App'x 646 (9th Cir. 2015). The respondent conceded he was arguing with the victim prior to being threatened. An ambulance was called to the scene to treat his victim, and his victim's chest injury was severe enough to require stitches. Further, the respondent received 5 years of probation, had to pay restitution, and was ordered not to contact the victim. These facts and circumstances support the Immigration Judge's finding that the respondent's crime was particularly serious.

Although the respondent argues that he did not intend to hurt anyone, this argument is insufficient to satisfy his burden of proving by a preponderance of the evidence that he is not subject to the particularly serious crime bar. *See* 8 C.F.R. § 1240.8(d). We therefore conclude that the Immigration Judge gave reasoned consideration to the evidence describing the respondent's felony battery offense under Florida law and correctly concluded that his conviction for this offense was a conviction for a "particularly serious crime" that barred him from applying for withholding of removal under section 241(b)(3)(B)(ii).

## III. CONCLUSION

The Immigration Judge properly pretermitted the respondent's application for withholding of removal under section 241(b)(3)(A) of the INA, 8 U.S.C. § 1231(b)(3)(A), after she concluded that his deferred adjudication for felony battery under Florida law rendered him "convicted by a final judgment of a particularly serious crime" within the meaning of section 241(b)(3)(B)(ii) of the INA, 8 U.S.C. § 1231(b)(3)(B)(ii). Accordingly, the appeal will again be dismissed.

**ORDER:** The respondent's appeal is dismissed.

*CONCURRING OPINION:* Anne J. Greer, Appellate Immigration Judge

Like the majority, I view the term "convicted by a final judgment of a particularly serious crime" under section 241(b)(3)(B)(ii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3)(B)(ii) (2018), as

ambiguous statutory language. I write separately to provide context in support of the majority by expanding on the reasons for ambiguity, which I view as related to the evolution of the INA's definition of "conviction."[1] From this perspective, I also conclude that the entry of the deferred adjudication, as predicated on the respondent's nolo contendere plea to felony battery under Florida law, qualifies as a particularly serious crime under the INA.

I address the meaning of the terms "conviction" and "final judgment" under section 241(b)(3)(B)(ii) of the INA, 8 U.S.C. § 1231(b)(3)(B)(ii), in turn, although I ultimately read them together and believe my reading conforms to the historical understanding of these terms in the immigration laws, which is consistent with the result reached by the majority. *See generally Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (stating that courts generally read statutory language in the context of the broader statutory scheme).

## I. ANALYSIS

### A. "Conviction"

As discussed by the majority, the term "convicted by a final judgment of a particularly serious crime" was added to the INA by the Refugee Act of 1980, Pub. L. No. 96-212, § 203(e), 94 Stat. 102, 106 (codified at former section 243(h)(2)(B) of the INA, 8 U.S.C. § 1253(h)(2)(B) (Supp. IV 1980)). It mirrors the language in the second paragraph of Article 33 of the 1951 United Nations Convention Relating to the Status of Refugees, *adopted* July 28, 1951, 19 U.S.T. 6259, 189 U.N.T.S. 150 (entered into force Apr. 22,

---

[1] Section 101(a)(48)(A) of the INA, 8 U.S.C. § 1101(a)(48)(A) (2018), defines "conviction" as

> a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—
>     (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
>     (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

This statutory definition applies retroactively to convictions entered prior to its enactment. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, § 322(c), 110 Stat. 3009-546, 3009-628 ("IIRIRA") (adding section 101(a)(48)(A) to the INA and providing that it "shall apply to convictions and sentences entered before, on, or after the date of enactment of the [IIRIRA]").

1954).  However, in 1980, the meaning of conviction for immigration purposes—particularly the degree of finality a conviction must attain before it can serve as a predicate for deportation—was unsettled and subject to varying interpretations, eventually leading to our decision in *Matter of Ozkok*, 19 I&N Dec. 546, 548–49 (BIA 1988) ("The question of what state action constitutes a conviction with sufficient finality for purposes of the immigration laws is one with which the Board has wrestled for many years."), *superseded by statute*, Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, § 322(a), 110 Stat. 3009-546, 3009-628 (codified at INA § 101(a)(48)(A), 8 U.S.C. § 1101(a)(48)(A) (Supp. II 1996)).

*Matter of Ozkok* revised the Board's prior definition of "conviction" that we articulated in *Matter of L-R-*, 8 I&N Dec. 269, 270 (BIA 1959), *overruled in part by Matter of Ozkok*, 19 I&N Dec. at 552.  In particular, *Ozkok* recognized that the proliferation of State court procedures to ameliorate criminal convictions in the years following *L-R-* had rendered that test obsolete, resulting in inconsistent outcomes.  *Matter of Ozkok*, 19 I&N Dec. at 550 ("Having reviewed our decisions [including *Matter of L-R-*], we must acknowledge that the standard which we have applied to the many variations in state procedure may permit anomalous and unfair results in determining which aliens are considered convicted for immigration purposes.").

In addition, *Ozkok* changed the requirement in *L-R-* that a State's classification of its crimes controlled the definition of "conviction" in favor of "a long-standing rule that whether a conviction exists for purposes of a federal statute is a question of federal law and should not depend on the vagaries of state law."  *Id.* at 551 n.6.  *Ozkok* created a bifurcated Federal standard for evaluating whether two different categories of State convictions qualified as a "conviction" for immigration purposes.

The first category of convictions *Ozkok* addressed was "formal judgment[s] of guilt entered by the court."  *Id.* at 551.  The second category described was cases "[w]here adjudication of guilt has been withheld."  *Id.* According to *Matter of Ozkok*, the first category of conviction by formal judgment achieved finality for immigration purposes when direct appellate review had been exhausted or waived, consistent with settled law.  *See* 19 I&N Dec. at 552 n.7 ("It is well established that a conviction does not attain a sufficient degree of finality for immigration purposes until direct appellate review of the conviction has been exhausted or waived.").

In the so-called "third prong" of the *Ozkok* standard, we stated that deferred adjudications were only recognized as final convictions for immigration purposes when there was no further availability of "proceedings

regarding the person's guilt or innocence." *Id.* at 552.[2]  In other words, under the third prong of *Ozkok*, a deferred adjudication that provided for a contingent right to contest guilt in the future, for example upon failure to complete the conditions imposed, was not final and did not equate to a "conviction," whereas State deferred adjudications without this contingency did.

Congress viewed the third prong of *Ozkok* as creating inconsistent outcomes among the States for deferred adjudications involving the same criminal conduct.  *See Matter of J.M. Acosta*, 27 I&N Dec. 420, 427 (BIA 2018).  In 1996, Congress therefore codified *Ozkok* in its entirety, except for its third prong regarding the finality requirement for deferred adjudications, which it eliminated.  In *Matter of Punu*, we examined the legislative history of this provision, which reflects "Congressional intent that even in cases where adjudication is 'deferred,' the original finding or confession of guilt is sufficient to establish a 'conviction' for purposes of the immigration laws." 22 I&N Dec. 224, 227 (BIA 1998) (quoting H.R. Rep. No. 104-828, at 224 (1996) (Conf. Rep.)).

In *Matter of Punu*, 22 I&N Dec. at 227, we held that the plain language of section 101(a)(48)(A) encompasses deferred adjudications that include a finding of guilt, plea of nolo contendere, or admission of sufficient facts to warrant a finding of guilt under section 101(a)(48)(A)(i) of the INA, 8 U.S.C. § 1101(a)(48)(A)(i).  As a result, we concluded that the INA no longer requires convictions stemming from deferred adjudications to be final.  *See id.* at 228.[3]

In response to *Punu*, courts have agreed that deferred adjudications are sufficient for immigration purposes where the elements specified in section 101(a)(48)(A), relating to deferred adjudications, are met.  *See, e.g.*, *Jaquez*

---

[2]  *Ozkok* created a three prong test for deferred adjudications.  The third prong provided that "a judgment or adjudication of guilt may be entered if the person violates the terms of his probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding the person's guilt or innocence of the original charge." *Matter of Ozkok*, 19 I&N Dec. at 552.

[3]  Distinct from deferred adjudications, for which Congress explicitly eliminated the finality requirement, *Matter of J.M. Acosta* specified that "Congress' silence regarding finality in section 101(a)(48)(A) clearly does result in ambiguity" for the separate category of formal judgments of guilt.  27 I&N Dec. at 427. We have interpreted, consistent with *Ozkok*, convictions obtained by a formal judgment of guilt as attaining sufficient finality for immigration purposes when direct appellate review has been exhausted or waived.  *See id.* at 432.  The United States Court of Appeals for the Second Circuit has deferred to *Matter of J.M. Acosta*'s holding that "a conviction may not trigger deportation until it is final; that is, until appellate review is waived or exhausted." *Brathwaite v. Garland*, 3 F.4th 542, 553 (2d Cir. 2021).  However, the court did not defer to our framework governing a late-filed direct appeal under New York law.  *Id.* at 553–55.

*v. Sessions*, 859 F.3d 258, 261–62 (4th Cir. 2017) (recognizing that the noncitizen's criminal proceedings "fall squarely within the definition of deferred adjudication" based on his guilty plea and the imposition of probation with conditions); *Herrera-Inirio v. INS*, 208 F.3d 299, 304 (1st Cir. 2000) (explaining that section 101(a)(48)(A) plainly "encompasses within the definition of 'conviction' situations in which adjudications of guilt have been withheld, as long as the defendant's guilt has been established by a trial, plea, or admission, and a judicial officer orders some form of punishment, penalty, or restraint on the defendant's liberty"); *Moosa v. INS*, 171 F.3d 994, 1010 (5th Cir. 1999) ("[T]he [INA's] definition of 'conviction' . . . encompasses Texas deferred adjudications . . . ."); *cf. Crespo v. Holder*, 631 F.3d 130, 134–35 (4th Cir. 2011) (determining that a deferred adjudication based on a noncitizen's plea of not guilty did not equate to a conviction for immigration purposes).

## B. "Final Judgment"

In addition to discussing how the respondent's deferred adjudication qualifies as a "conviction," we must address why the respondent's conviction is "by a final judgment." When Congress added the latter phrase to the INA, we considered a conviction to be by a "final judgment" for immigration purposes where a State criminal court imposed some form of sentence, thereby ending the court's action over the case, even if the imposition of that sentence was suspended. *See Matter of L-R-*, 8 I&N Dec. at 270 (describing a conviction as being "final" for immigration purposes where "the court takes action which removes the case from the category of those which are (actually, or in theory) pending for consideration by the court—the court orders the defendant fined, or incarcerated or the court suspends sentence, or the court suspends the imposition of sentence"). This interpretation of "final judgment" is also consistent with definitions of that phrase from dictionaries that existed prior to 1980. *See* FINAL JUDGMENT, *Black's Law Dictionary* (4th ed. 1968) (defining "final judgment" as "[o]ne which puts an end to a suit or action"); FINAL JUDGMENT, *Bouvier's Law Dictionary* (8th ed. 1914) ("*Final judgment* is one which puts an end to a suit.").

It also matches the Attorney General's contemporaneous interpretation of that phrase, as reflected in *Matter of A-F-*, 8 I&N Dec. 429, 446 (A.G. 1959). In that case, the Attorney General relied on the Supreme Court's decision in *Berman v. United States*, 302 U.S. 211 (1937), to determine the "point at which" a "conviction" has been entered "in the normal sense" for purposes of Federal law, and thus immigration purposes. In *Berman*, 302 U.S. at 212, the Supreme Court held that a "[f]inal judgment in a criminal case means sentence. The sentence is the judgment." We adopted this same

understanding of "final judgment" in *Matter of T-*, 6 I&N Dec. 835, 838 (BIA 1955). In that case, we stated, "It is well established that sentence in a criminal case is a final judgment of conviction. The sentence is the judgment." *Id.* at 837–38 (citing *Berman*, 302 U.S. at 212) (concluding that there was no "final judgment" where "no judgment or sentence was pronounced").

This understanding of "final judgment" is consistent with our decision in *Matter of J.M. Acosta*, 27 I&N Dec. 420, which interprets the separate conviction category involving formal judgments of guilt. It was our understanding in that case that appeals could be taken from a "final judgment or order," indicating that we did not view finality—that is, the requirement that appeal be exhausted or waived—to be equivalent to a "final judgment" in the sense articulated in *Matter of T-* and other cases. *Matter of J.M. Acosta*, 27 I&N Dec. at 432 n.11. Finally, we noted that the phrase "final judgment" in section 241(b)(3)(B)(ii) "shed[s] light on what Congress means in the [INA] when it uses the term 'conviction,'" which, as noted, above is related to, and overlaps with, the concept of "final judgment." *Id.* at 428.

## II. APPLICATION TO THE RESPONDENT

In 1999, the respondent pled nolo contendere to felony battery under section 784.041 of the Florida Statutes, adjudication was deferred under section 948.01(1) of the Florida Statutes, and he was placed on probation with conditions. Under section 101(a)(48)(A) of the INA, 8 U.S.C. § 1101(a)(48)(A), and consistent with *Matter of Punu*, the respondent's deferred adjudication is a "conviction" for immigration purposes, even though Florida law permits further appellate review of nolo contendere orders under certain circumstances. *See, e.g.*, *Graves v. State*, 331 So. 3d 210, 212 (Fla. Dist. Ct. App. 2022) (providing that "[a] defendant who pleads guilty or nolo contendere may expressly reserve the right to appeal a prior dispositive order of the lower tribunal" (alteration in original) (citation omitted)); *see also Matter of Punu*, 22 I&N Dec. at 228 (holding that a deferred adjudication remains a conviction even where there is the possibility of further appellate review). Further, in light of the imposition of probation, the deferred adjudication qualifies as a "final judgment," since probation is understood to be a "sentence" under Federal law. *See* 18 U.S.C. § 3561(a) (2018) (outlining the circumstances under which a person "may be *sentenced* to a term of probation" (emphasis added)).

Consistent with our past precedents, I would conclude that a conviction is "by a final judgment" under section 241(b)(3)(B)(ii) once a sentence is imposed, even if that sentence is later suspended. Because the respondent here entered his plea of nolo contendere and a sentence of probation was

imposed, he was convicted "by a final judgment" within the meaning of section 241(b)(3)(B)(ii) of the INA, 8 U.S.C. § 1231(b)(3)(B)(ii).

## III. CONCLUSION

In 1988 the Board crafted a revised definition of "conviction" to separately address conviction "in the normal sense," or formal judgments of guilt, from the emerging category of deferred adjudications. This standard was codified by Congress with a more streamlined approach to recognize a deferred adjudication as sufficient for Federal immigration purposes at the time punishment is imposed, and provided other specified elements are satisfied.[4]

Therefore, while no uniform or default definition of the meaning of conviction for immigration purposes existed in 1980 when the language barring noncitizens "convicted by a final judgment of a particularly serious crime" from withholding of removal was added to the INA, we now have a congressionally mandated Federal definition to apply. And, this definition incorporates the concept of "final judgment" by recognizing, consistent with the phrase's ordinary meaning at the time of enactment, that judgment is final when a sentence is imposed. This interpretation of "final judgment" applies to both formal judgments of guilt and deferred adjudications.

I agree with the majority that this definition of "conviction" should be applied to section 241(b)(3)(B)(ii) of the INA, 8 U.S.C. § 1231(b)(3)(B)(ii). I would also conclude that the respondent's deferred adjudication under the terms of the Florida criminal procedure is a "conviction by a final judgment" because sentence, or a "restraint on [his] liberty" was imposed, namely, in the form of probation, after he pled nolo contendere. INA § 101(a)(48)(A)(i)–(ii), 8 U.S.C. § 1101(a)(48)(A)(i)–(ii). I further agree that the respondent is convicted of a particularly serious crime given the circumstances of his criminal conduct.

---

[4]  The statutory definition for "conviction" does not address the separate questions of whether post-conviction actions such as expungement or vacatur eliminate immigration consequences, which are addressed in a different line of cases. *See, e.g.*, *Alim v. Gonzales*, 446 F.3d 1239, 1250 (11th Cir. 2006) (deferring to the Board's approach in such cases); *Matter of Dingus*, 28 I&N Dec. 529 (BIA 2022) (reaffirming *Matter of Pickering*, 23 I&N Dec. 621 (BIA 2003), *rev'd on other grounds*, *Pickering v. Gonzales*, 465 F.3d 263 (6th Cir. 2006), which gives effect to State vacatur orders that are based on substantive or procedural defects in the underlying criminal proceedings); *cf. Matter of Roldan*, 22 I&N Dec. 512, 522–23 (BIA 1999) (holding that State rehabilitative procedures do not eliminate immigration consequences of criminal convictions).