[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14340

_____

EVERTON DAYE,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A200-316-306

_____

Before GRANT, LUCK, and HULL, Circuit Judges.

HULL, Circuit Judge:

Everton Daye, a native and citizen of Jamaica, petitions for review of the Board of Immigration Appeals's ("BIA") decision that concluded that Daye was removable based on (1) his two state convictions for felony transporting into Virginia controlled substances with the intent to distribute and (2) his third state conviction for felony conspiracy to transport marijuana into Virginia.

After review and with the benefit of oral argument, we hold that the BIA did not err in concluding that Daye was removable because his state drug trafficking convictions categorically constitute crimes involving moral turpitude ("CIMT") within the meaning of Immigration and Nationality Act ("INA") § 237(a)(2)(A)(i)-(ii), 8 U.S.C. § 1227(a)(2)(A)(i)-(ii). Further, the Supreme Court's decision in *Jordan v. De George* forecloses Daye's claim that the phrase "crime involving moral turpitude" in the INA is unconstitutionally vague. *See* 341 U.S. 223, 231-32, 71 S. Ct. 703, 708 (1951). Accordingly, we deny Daye's petition.

## I.    BACKGROUND

### A. *Daye's Virginia Convictions*

On May 22, 2008, Daye was admitted to the United States on a B-2 visitor's visa. After Daye married a U.S. citizen, his status was adjusted to lawful permanent resident in September 2009.

In separate criminal cases in 2013, Daye was convicted of (1) two substantive counts of transporting one ounce or more of cocaine, or another Virginia Schedule I or II controlled substance, or five pounds of marijuana into Virginia with the intent to sell or distribute the substance, in violation of Va. Code Ann. § 18.2-248.01, and (2) one conspiracy count of transporting more than five pounds of marijuana into Virginia, in violation of Va. Code Ann. § 18.2-256 (the conspiracy statute). The underlying substantive offense for the conspiracy count is Va. Code Ann. § 18-2.248.01, the same statute in Daye's other convictions. The parties agree that Daye committed his two substantive drug offenses on March 15, 2013 and his marijuana conspiracy offense beginning on August 13, 2013.

In February 2014, the state court imposed prison terms of seven years for each of the two substantive drug offenses, to run consecutively, and another consecutive prison term of five years for the marijuana conspiracy offense. The resulting total term was 19 years, with six years to be served in prison and the balance suspended.

## B. Removal Proceedings Before the IJ

In 2018, the Department of Homeland Security issued a Notice to Appear, charging Daye with removability on multiple grounds, including: (1) under INA § 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i), as an alien convicted of a CIMT committed within five years after admission for which a sentence of one year

20-14340                Opinion of the Court                4

or longer may be imposed; and (2) under INA § 237(a)(2)(A)(ii), 8 U.S.C. § 1227(a)(2)(A)(ii), as an alien who at any time after admission was convicted of two CIMTs not arising out of a single scheme of criminal misconduct.[1]

In April 2019, Daye, represented by counsel, moved to terminate removal proceedings. Daye argued that his state drug convictions did not qualify as CIMTs because Virginia's statutes penalized substances that were not federally controlled and transporting a non-federally controlled substance was akin to a regulatory offense that was not morally reprehensible. In opposition, the government argued, *inter alia*, that Daye's drug convictions supported removability because the BIA had long held that participation in an illicit drug trafficking crime was an offense involving moral turpitude. *See In re Khourn*, 21 I. & N. Dec. 1041, 1046-47 (BIA 1997).

The IJ denied Daye's motion to terminate removal proceedings based on the CIMT grounds. The IJ concluded that all three of Daye's Virginia drug convictions constituted CIMTs. The IJ determined that the prohibited substances in Va. Code Ann. § 18.2-248.01 were broader than the federal controlled substances. Further, Va. Code Ann. § 18.2-248.01 was not a divisible statute, and thus the categorical approach applied.

---

[1] The IJ granted Daye's motion to terminate as to two other grounds for removability charged in the Notice to Appear. The CIMT grounds are the only ones before us.

Applying the categorical approach, the IJ concluded an offense under Va. Code Ann. § 18.2-248.01—which includes an intent to distribute—necessarily required a morally culpable mental state and morally reprehensible conduct. The IJ relied upon *In re Khourn*, in which the BIA held that cocaine distribution in violation of 21 U.S.C. § 841(a)(1) constitutes a CIMT. *See* 21 I. & N. Dec. at 1044 n.4, 1046-47. The IJ also cited *Guevara-Solorzano v. Sessions*, in which the Fourth Circuit concluded that a Tennessee conviction for unlawful possession of marijuana with intent to manufacture, deliver or sell constituted a CIMT. *See* 891 F.3d 125, 129, 135-36 (4th Cir. 2018).

Because Daye committed the two substantive drug offenses within five years after his May 22, 2008 admission, and those offenses carried a sentence of one year or longer, the IJ found that Daye was removable under INA § 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i). Because those two substantive drug offenses and Daye's drug conspiracy offense all occurred after his 2008 admission and did not arise out of a single scheme of criminal misconduct, the IJ found that Daye was removable also under INA § 237(a)(2)(A)(ii), 8 U.S.C. § 1227(a)(2)(A)(i).

The government's motion for reconsideration argued that the IJ erred in concluding that Va. Code Ann. § 18.2-248.01 was not divisible as to the particular substance transported. Denying the motion, the IJ concluded that the particular substance transported was not an element of the offense under Virginia law given that it was not required to be found by the jury and there were no

20-14340                Opinion of the Court                6

sentencing differences corresponding with the type of substance. Daye was ordered removed to Jamaica.

### C.  Appeal to the BIA

On appeal to the BIA, Daye contended his Virginia offenses were not categorically CIMTs.  The government did not cross-appeal to the BIA the IJ's divisibility ruling, but it did "maintain[]" in a motion for summary affirmance that Va. Code Ann. § 18.2-248.01 was divisible and the modified categorical approach should apply.

The BIA affirmed the IJ's decision that Daye was removable on CIMT grounds under both INA § 237(a)(2)(A)(i) and (ii), 8 U.S.C. § 1227(a)(2)(A)(i) and (ii).  Stressing that it had long held that "participation in illicit drug trafficking is a CIMT," the BIA agreed with the IJ that a violation of Va. Code Ann. § 18.2-248.01 was categorically a CIMT.  The BIA did not address or disturb the IJ's divisibility ruling.

## II.    DISCUSSION

### A.  Crime Involving Moral Turpitude under the INA

An alien is removable if he or she has been convicted of a felony CIMT within five years after admission or has been convicted of two or more CIMTs not arising out of a single scheme at any time after admission.  INA § 237(a)(2)(A)(i)-(ii), 8 U.S.C.

20-14340            Opinion of the Court                7

§ 1227(a)(2)(A)(i)-(ii).[2] The phrase "moral turpitude" is not defined in the INA.

This Court has ruled that moral turpitude means an "act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." *Cano v. U.S. Att'y Gen.*, 709 F.3d 1052, 1053 (11th Cir. 2013) (quotation marks omitted). Similarly, the BIA has defined "moral turpitude" to mean "conduct that is inherently base, vile, or depraved" and has said that "[t]o involve moral turpitude, a crime requires two essential elements: reprehensible conduct and a culpable mental state." *In re Silva-Trevino*, 26 I. & N. Dec. 826, 833-34 (BIA 2016) (quotation marks omitted); *see Zarate v. U.S. Att'y Gen.*, 26 F.4th 1196, 1200-01 (11th Cir. 2022) (describing this Court's definition of moral turpitude as similar to the BIA's definition). This Court has given *Chevron*[3] deference to the BIA's definition of moral turpitude and "its application of that definition in precedential opinions." *See Zarate*, 26 F.4th at 1201, 1207.

---

[2] Whether a conviction qualifies as a CIMT under the INA is a legal question we review *de novo*. *Lauture v. U.S. Att'y Gen.*, 28 F.4th 1169, 1172 (11th Cir. 2022). Where, as here, the BIA affirmed the IJ and agreed with the IJ's reasoning, we review the decisions of both the IJ and the BIA. *See Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016).

[3] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778 (1984).

"Consistent with the two elements identified by the BIA," this Court has concluded that "a crime involving moral turpitude must involve conduct that not only violates a statute but also independently violates a moral norm." *Id.* at 1201 (quotation marks omitted). We have identified two classes of crimes involving moral turpitude: (1) fraud offenses, which based on Supreme Court precedent are "categorically deemed to involve moral turpitude"; and (2) "non-fraud offenses" that "must also satisfy the 'inherently base, vile, or depraved' requirement to constitute CIMTs." *Id.* at 1201-02 (citing *De George*, 341 U.S. at 232, 71 S. Ct. at 708). "[I]t is inappropriate to conflate the BIA's two requirements in non-fraud scenarios so that one (a culpable mental state) automatically satisfies the other (moral reprehensibility)." *Id.* at 1207-08 (concluding the BIA erred "by collapsing the two requirements of moral turpitude into one"). That said, "one can inform the other." *Id.*

The BIA has long held that drug trafficking offenses constitute CIMTs. For instance, in *In re Khourn*, the BIA concluded that distribution of cocaine, in violation of 21 U.S.C. § 841(a), is a CIMT. 21 I. & N. Dec. at 1041. In *Khourn*, the BIA reasoned that § 841(a), unlike "a statute that was regulatory," is a criminal statute that "clearly requires a mental state of knowledge or intent." *Id.* at 1045-46. Additionally, "an evil intent"—i.e., moral reprehensibility—is "inherent in the crime of distribution of a controlled substance" under § 841(a). *Id.* at 1047; *see also In re Acosta*, 27 I. & N. Dec. 420, 422-24 (BIA 2018) (concluding

20-14340                Opinion of the Court                9

attempted criminal sale of a controlled substance under New York law constitutes a CIMT); *In re Gonzalez Romo*, 26 I. & N. Dec. 743, 745-46 (BIA 2016) (concluding solicitation to possess marijuana for sale under Arizona law constitutes a CIMT).

As to moral reprehensibility, the BIA in *Khourn* stressed that "Congress" had "explained in legislative history" that "few criminal acts . . . are more reprehensible than the act of abetting drug addiction by engaging in the illicit narcotic and marihuana trafficking." 21 I. & N. Dec. at 1046 (quoting H.R. Rep. No. 84-2388, at 11(1956)). The BIA observed that while there was disagreement as to whether "mere possession of controlled substances" involved moral turpitude, "both Federal and State courts concur that participation in illicit drug trafficking is a crime involving moral turpitude." *Id.* at 1046-47 (listing federal and state precedent finding that participation in the sale of illicit drugs is "depraved" and "morally indefensible," "involves the intent to corrupt others," and "contributes to the physical harm of the purchaser"); *see also Acosta*, 27 I. & N. Dec. at 423 (rejecting argument that "the intent in selling a drug may not be evil" where the state law prohibiting the unauthorized sale of drugs was enacted to prevent societal harm).

Consistent with the BIA, our sister circuits that have addressed the issue have also concluded that drug trafficking offenses have the requisite culpable mental state and moral reprehensibility to constitute CIMTs. *See Mota v. Barr*, 971 F.3d 96, 99-101 (2d Cir. 2020) (addressing felony possession of narcotics

with intent to sell under Connecticut law); *Guevara-Solorzano*, 891 F.3d at 128, 135-36 (addressing unlawful possession of marijuana with intent to manufacture, deliver, or sell under Tennessee law); *Barragan-Lopez v. Mukasey*, 508 F.3d 899, 903-04 (9th Cir. 2007) (addressing solicitation to possess over four pounds of marijuana for sale under Arizona law).

### B. Categorical Approach

Here, the IJ concluded that Va. Code Ann. § 18.2-248.01 is not divisible and that the categorical approach applies. As noted earlier, the BIA did not address or disturb that ruling. In their initial merits briefs filed with this Court, the parties do not dispute the IJ's divisibility determination and instead argue about whether under the categorical approach a violation of the Virginia statute constitutes a CIMT. Therefore, we do not address the divisibility of Va. Code Ann. § 18.2-248.01 and assume for purposes of this petition for review that we apply the categorical approach.[4]

---

[4] For the first time in supplemental briefing, the government argued that Va. Code Ann. § 18.2-248.01 is divisible and the modified categorical approach applies. We decline to address divisibility because the government's initial brief failed to raise divisibility. *See United States v. Nealy*, 232 F.3d 825, 830 (11th Cir. 2000). In any event, as discussed later, even the least culpable acts under Va. Code Ann. § 18.2-248.01 categorically constitute a CIMT. *See Gelin v. U.S. Att'y Gen.*, 837 F.3d 1236, 1243 (11th Cir. 2016) (declining to address the "divisibility question" where the least culpable conduct under the statute of conviction categorically constituted a CIMT "in any event").

20-14340                Opinion of the Court                 11

Under the categorical approach, we "ask whether the least culpable conduct necessary to sustain a conviction under the statute meets the standard of a crime involving moral turpitude." *Zarate*, 26 F.4th at 1199 (quotation marks omitted); *see also Cano*, 709 F.3d at 1053 n.3. In determining whether an offense constitutes a CIMT, "we 'may rely on court decisions in the convicting jurisdiction that interpret the meaning of the statutory language.'" *Smith v. U.S. Att'y Gen.*, 983 F.3d 1206, 1210 (11th Cir. 2020) (quoting *Gelin v. U.S. Att'y Gen.*, 837 F.3d 1236, 1243 (11th Cir. 2016)). We begin with the Virginia statute of conviction and the elements of the offense and then compare them to the two requirements for a CIMT.[5]

Virginia Code § 18.2-248.01 makes it a felony for:

[A]ny person to transport into the Commonwealth by any means with intent to sell or distribute one ounce or more of cocaine, coca leaves or any salt, compound, derivative or preparation thereof as described in Schedule II of the Drug Control Act or one ounce or more of any other Schedule I or II controlled substance or five or more pounds of marijuana.

---

[5] Daye agrees that his petition for review stands or falls on whether the substantive offense of transportation categorically constitutes a CIMT because in immigration proceedings inchoate offenses such as conspiracy qualify as a CIMT if the underlying substantive offense qualifies as a CIMT. *See In re Gonzalez Romo*, 26 I. & N. Dec. at 743, 746.

Va. Code Ann. § 18.2-248.01.

Virginia courts have concluded that "[t]he plain and obvious meaning of [Va.] Code § 18.2-248.01 is to prohibit the transportation of illegal substances into Virginia by a person whose intent is to distribute those substances." *Washington v. Commonwealth*, 597 S.E.2d 256, 305-06 (Va. Ct. App. 2004) (cleaned up). To convict a defendant of violating Va. Code Ann. § 18.2-248.01, the state must prove the defendant transported "by any means" one of the illegal substances identified in the statute with the intent to distribute it. *Seke v. Commonwealth*, 482 S.E.2d 88, 89-90, 91 (Va. Ct. App. 1997) (quoting Va. Code Ann. § 18.2-248.01).[6]

We readily conclude that even the least culpable conduct that violates this Virginia drug statute categorically constitutes a CIMT. As to culpable mental state, Va. Code Ann. § 18.2-248.01 requires that the defendant have the intent to distribute to others the illegal substance he has transported into Virginia. The intent to traffic an illegal substance satisfies the mens rea requirement for a CIMT.

---

[6] The state, however, "is not required to prove the place where a defendant intends to distribute illegal substances in order to obtain a conviction" because the statute "contains no express geographical limitation applicable to the intent element." *Seke*, 482 S.E.2d at 90. "[A] violation of [Va.] Code § 18.2-248.01 occurs the moment a person transporting illegal substances penetrates the borders of the Commonwealth." *Green v. Commonwealth*, 528 S.E.2d 187, 192 (Va. Ct. App. 2000).

As to moral reprehensibility, transporting an illegal substance with the intent to distribute it is inherently base, vile, or depraved conduct. We agree with the BIA and our sister circuits that, given the profound societal harms caused by drug abuse and unlawful drug distribution, participating in illicit drug trafficking, including by transporting the drugs to be trafficked with intent to distribute, is reprehensible conduct.

What Daye views as the least culpable conduct covered by Va. Code Ann. § 18.2-248.01 has been something of a moving target. He appears to have settled on the act of transporting five or more pounds of marijuana through Virginia with the intent to distribute it in another state where its distribution is lawful with a license. Daye contends this conduct is not a CIMT because, in light of evolving societal views on marijuana, that conduct "can no longer be said to violate societal norms."

Daye points to the fact that Virginia, along with many other states, recently decriminalized the possession of small amounts of marijuana for either medical or personal use. *See* Va. Code Ann. §§ 4.1-1100(A), 54.1-3408.3, 54.1-3442.7, 54.1-3442.8.[7] That some

---

[7] In July 2021, Virginia legalized simple possession of one ounce or less of marijuana by persons who are at least 21 years of age. *See* Va. Code Ann. § 4.1-1100(A); *see also* Va. Acts 2021, Sp. S. 1, chap. 550 ("Acts 2021"), cl. 1 at 155, cl. 3 at 279. Possession of amounts over one ounce is subject to a civil penalty, but possession of more than one pound of marijuana remains a felony offense. Va. Code Ann. § 4.1-1100(B),(C). It also remains illegal to sell, possess with intent to sell, or distribute any amount of marijuana in Virginia and to

states allow possession of small amounts of marijuana is irrelevant to whether trafficking large amounts of it involves moral turpitude. In any event, Virginia, like many states, continues to criminalize possession of larger amounts of marijuana. *See* Va. Code Ann. § 4.1-1100(C); *see also, e.g.*, Colo. Rev. Stat. § 18-18-406(4); Cal Health & Safety Code § 11357; Rev. Code Wash. § 69.50.4014. And Virginia continues to prohibit, and prosecute as a felony, marijuana trafficking, including selling, giving, distributing, or possessing with intent to sell, give, or distribute more than one ounce of marijuana, and transporting five or more pounds of marijuana with the intent to distribute. Va. Code Ann. §§ 18.2-248.1(2), 18.2-248.01. Whatever might be said about personal use of small amounts of marijuana, Daye has not shown a corresponding change in society's views about trafficking marijuana in larger amounts.

Alternatively, Daye suggests the least culpable conduct is transporting into Virginia a substance on Virginia's list of controlled substances but not on the federal list of controlled substances.[8] Daye contends such substances are "harmless,"

transport five pounds or more of marijuana into the state. Va. Code Ann. §§ 18.2-248.1, 18.2-248.01.

[8] Virginia codifies its Schedule I and Schedule II lists of controlled substances in provisions of the Drug Control Act, Va. Code Ann. § 54.1-3446 and § 54.1-3448, respectively. While there is some dispute as to the number of substances, the parties agree that at the time of Daye's convictions, Virginia's Schedule I listed some substances that the federal schedules did not.

making their transportation into Virginia a mere regulatory offense similar to transporting alcohol or cigarettes. *See In re J-*, 2 I. & N. Dec. 99, 104-05 (BIA 1944) (holding that unlawful sale of alcohol to Native Americans who are wards of the government in violation of a federal statute that had no mens rea requirement was a regulatory offense and not a CIMT).

Virginia, by listing a particular substance in one of its schedules, has determined that the substance has a high potential for abuse and poses a risk to public health if it is left uncontrolled. *See* Va. Code Ann. §§ 54.1-3443, 54.1-3445, 54.1-3447. The fact that the federal government has not listed the same substance does not establish that the substance is per se "harmless." As the government points out, both state governments and the federal government must periodically add substances to their schedules in an effort to keep up with underground chemists who search out and use new chemicals to circumvent drug laws. The federal government prosecutes some of the substances listed in the Virginia schedules as analogues or isomers of federally listed substances. *See* 21 U.S.C. § 813; *see e.g.*, *United States v. Phifer*, 909 F.3d 372, 375-81 (11th Cir. 2018) (involving a conviction for possession with intent to distribute ethylone, a non-listed substance, as an isomer of butylone, a temporarily listed substance); *United States v. Achey*, 943 F.3d 909, 912 (11th Cir. 2019) (involving a conspiracy to distribute and possess with intent to distribute tetrahydrofuran fentanyl, an analogue of fentanyl, a Schedule II controlled substance). We will not second guess

Virginia's determination that the substances it has listed are potentially harmful to others if left uncontrolled solely on the basis that the federal government has not also listed, or has delisted, those substances. Daye's argument that transportation with intent to distribute a non-federally controlled substance into Virginia amounts to only a regulatory offense, and not a CIMT, is without merit.

### C. Vagueness Challenge

Daye argues that the statutory phrase "crime involving moral turpitude" in the INA is unconstitutionally vague in light of the Supreme Court's decisions in *Johnson v. United States*, 576 U.S. 591, 135 S. Ct. 2551 (2015), and *Sessions v. Dimaya*, 584 U.S. ___, 138 S. Ct. 1204 (2018).[9] In *Jordan v. De George*, the Supreme Court held that the phrase "crime involving moral turpitude" was not unconstitutionally vague. 341 U.S. at 231-32, 71 S. Ct. at 708. We are bound by *De George*. *Zarate*, 26 F.4th at 1200 & n.2. *Johnson* and *Dimaya* addressed different federal statutes with different statutory phrases and therefore do not permit this Court to deviate from *De George*. *See United States v. Thomas*, 242 F.3d 1028, 1035 (11th Cir. 2001) (explaining this Court is bound to follow Supreme Court precedent "until the Supreme Court itself overrules that decision").

---

[9] We review constitutional questions *de novo*. *Poveda v. U.S. Att'y Gen.*, 692 F.3d 1168, 1172 (11th Cir. 2012).

### III.    CONCLUSION

For the foregoing reasons, we conclude the BIA did not err in determining that Daye's convictions for violating, and conspiring to violate, Va. Code Ann. § 18.2-248.01 were categorically CIMTs.    As a consequence, the BIA properly determined that Daye was removable pursuant to INA § 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i), and 237(a)(2)(A)(ii), 8 U.S.C. § 1227(a)(2)(A)(ii).

**PETITION DENIED.**