[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-12709

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

LISETTE LOPEZ,
a.k.a. Lissette Lopez Prat,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cv-20550-CMA

_____

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and GRANT, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide how to apply the categorical approach to a conspiracy crime—a question of first impression in our Circuit. The United States seeks to revoke Lisette Lopez's naturalization on the ground that she committed a crime of moral turpitude within five years of applying for citizenship and willfully concealed or misrepresented during the application process the fact that she had committed a crime. The district court granted judgment on the pleadings in favor of the government on the ground that Lopez had committed a crime of moral turpitude during the statutory period. Because the crime to which Lopez pleaded guilty—conspiring to launder money—did not categorically involve moral turpitude, we reverse and remand for further proceedings consistent with this decision.

## I. BACKGROUND

Lisette Lopez is a naturalized citizen of the United States. She was born in Cuba and was a national of Venezuela when she sought American citizenship. In 2003, she filed an Application for Naturalization (Form N-400), on which she certified under penalty of perjury that she had never "committed a crime or offense for which [she was] NOT arrested." She signed the form again after completing her naturalization interview. On the day she took her naturalization oath in 2007, she signed Form N-445, attesting that she had not committed a crime or offense for which she was not

arrested since her initial interview. Lopez became an American citizen on August 10, 2007.

Lopez was charged in 2012 with healthcare fraud and conspiracy crimes. In 2012, Lopez pleaded guilty to conspiracy to commit money laundering. *See* 18 U.S.C. § 1956(h). In the accompanying factual proffer, she admitted that in 2004, she incorporated a pharmacy called Medline, which she operated from August 2004 to July 2008. Lopez admitted that she and her husband, Lazaro Prat, submitted millions of dollars in Medicare claims on behalf of Medline from February 2005 to July 2008. The proffer stated that "[d]uring this time period, [Lopez] was aware that Prat was submitting and causing the submission [of] several million dollars in false and fraudulent Medicare claims on behalf of Medline." She and Prat agreed to launder the money and conducted transactions with the proceeds to disguise their nature. Lopez admitted that she bought property, including a Mercedes S430, with money from a bank account that she was aware contained the proceeds of the fraudulent claims. In December 2012, Lopez was adjudicated guilty and sentenced to four years of imprisonment followed by three years of supervised release. In her plea agreement, she acknowledged that her guilty plea could result in her denaturalization.

In 2021, the United States filed a complaint in the district court to revoke Lopez's naturalization. The complaint alleged that Lopez had illegally procured her naturalization on the ground that she had failed to meet the requirement of "good moral character."

8 U.S.C. § 1427(a)(3). It alleged that Lopez had committed a crime of moral turpitude and had willfully misrepresented or concealed the fact that she had committed a crime during the naturalization process.

Lopez moved to dismiss the complaint. She asserted that the denaturalization action was barred by a statute of limitations, *see* 28 U.S.C. § 2462, and the doctrine of laches. She also argued that the government failed to state a claim, *see* Fed. R. Civ. P. 12(b)(6), because the crime of which she was convicted did not categorically involve moral turpitude. The district court denied the motion to dismiss.

The government moved for judgment on the pleadings on the ground that Lopez had illegally procured her naturalization because she had committed a crime of moral turpitude during the statutory period. The district court granted that motion. It concluded that the conspiracy crime to which Lopez pleaded guilty overlapped with the statutory "good moral character" period and that her crime of conviction involved moral turpitude.

## II. STANDARD OF REVIEW

We review *de novo* a judgment on the pleadings. *Samara v. Taylor*, 38 F.4th 141, 149 (11th Cir. 2022). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001).

### III. DISCUSSION

A district court must "enter[] a judgment of denaturalization against a naturalized citizen whose citizenship was procured illegally or by willful misrepresentation of material facts." *Fedorenko v. United States*, 449 U.S. 490, 517 (1981); *see* 8 U.S.C. § 1451(a). A lack of "strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship" will "render[] the certificate of citizenship 'illegally procured.'" *Fedorenko*, 449 U.S. at 506. Federal law requires that an applicant for naturalization be "a person of good moral character" from five years before filing her application up to the time she is granted citizenship. 8 U.S.C. § 1427(a). "No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established," committed one of the specified forms of misconduct, *id.* § 1101(f), including "a crime involving moral turpitude," *id.* §§ 1101(f)(3), 1182(a)(2)(A)(i)(I).

"To determine whether a[] . . . prior conviction qualifies as . . . a crime involving moral turpitude, we apply the categorical approach." *George v. U.S. Att'y Gen.*, 953 F.3d 1300, 1303 (11th Cir. 2020). We examine the elements of the offense the naturalized citizen was convicted of committing—not her actual conduct—to determine if every means of committing that crime *necessarily* involves moral turpitude. *See id.* at 1303–04. Moral turpitude means conduct that involves "baseness, vileness, or depravity." *Daye v. U.S. Att'y Gen.*, 38 F.4th 1355, 1360 (11th Cir. 2022) (citation omitted).

The application of the categorical approach depends on the statutory structure. "[I]f the . . . statute of conviction is indivisible—that is, if it defines only one crime with a single set of elements—we ask whether the least culpable conduct that the statute makes criminal qualifies as . . . a crime involving moral turpitude." *George*, 953 F.3d at 1303. By contrast, "if the statute has multiple, alternative elements, and so effectively creates several different crimes, we apply the modified categorical approach." *Id.* (citation and internal quotation marks omitted). Under that approach, we review "a limited class of documents"—called *Shepard* documents—"to determine what crime, with what elements, a defendant was convicted of." *Id.* at 1303–04 (quoting *Mathis v. United States*, 579 U.S. 500, 505–06 (2016)); *see Shepard v. United States*, 544 U.S. 13, 26 (2005). We then identify the least culpable conduct encompassed by that crime. *Mathis*, 579 U.S. at 519 (holding that the categorical approach's reliance upon elements rather than means "does not change when a statute happens to list possible alternative means of commission"); *George*, 953 F.3d at 1304 (explaining that the elements of the crime of conviction must "categorically fit within the federal definition of . . . a crime involving moral turpitude"). If the crime could be committed in a manner that does not involve moral turpitude, then the statute is overbroad—that is to say, it does not "categorically" involve moral turpitude.

When a defendant has been convicted of a conspiracy crime, the categorical approach demands that we determine whether the underlying substantive offense is divisible. If it is, we must identify the elements of the underlying crime that the defendant was

21-12709                Opinion of the Court                7

convicted of conspiring to violate. Under the modified categorical approach, we look to *Shepard* documents, such as an indictment, to determine what elements were encompassed by Lopez's guilty plea. *See Mathis*, 579 U.S. at 505–06; *George*, 953 F.3d at 1303–04. "We then do what the categorical approach demands and determine whether the elements of the crime of conviction . . . categorically fit within the federal definition of . . . a crime involving moral turpitude." *See George*, 953 F.3d at 1304 (citation and internal quotation marks omitted). This approach is consistent with the requirement of determining what elements the government would have had to prove beyond a reasonable doubt at trial. *Mathis*, 579 U.S. at 504.

To our knowledge, each of our sister circuits that have considered the question has likewise concluded that when a defendant has been convicted of conspiring to commit a crime, the categorical approach requires the court to determine whether the statute defining the underlying crime is divisible if it would otherwise be overbroad. *See Santana-Felix v. Barr*, 924 F.3d 51, 56 (2d Cir. 2019) ("Having determined that the object offense of Santana-Felix's conspiracy conviction was second-degree murder, we must determine whether second-degree murder . . . . is a categorical match, and if it is not, whether the statute is divisible so that we may apply the modified categorical approach."); *Shaw v. Sessions*, 898 F.3d 448, 453 (4th Cir. 2018) ("[W]hen a sentencing court must determine if a defendant's conviction under a generic conspiracy statute is categorically identical to a generic federal crime[,] it should look beyond the statute and, instead, apply the categorical approach to the conspiracy's object." (citing *United States v. Ward*, 171 F.3d 188, 192–

93 (4th Cir. 1999))); *United States v. Ochoa*, 861 F.3d 1010, 1016–17 (9th Cir. 2017) (applying the categorical approach to the object of a conspiracy), *abrogated in part on other grounds by United States v. Palomar-Santiago*, 141 S. Ct. 1615, 1620 (2021); *see also United States v. Shaffers*, 22 F.4th 655, 666 (7th Cir. 2022) ("[W]here the crime of conviction incorporates the definition of another crime . . . we have often recognized that the sentencing court may need to evaluate whether that other statute is divisible."). The Board of Immigration Appeals too holds that "[a] conspiracy to commit an offense involves moral turpitude only when the underlying substantive offense is a crime involving moral turpitude." *In re Flores*, 17 I. & N. Dec. 225, 228 (B.I.A. 1980).

We must apply the modified categorical approach to Lopez's conspiracy conviction. We first determine the elements of the offense that Lopez pleaded guilty to conspiring to commit. We then determine whether that offense categorically involves moral turpitude.

### A. Section 1956(h) Is Divisible.

Lopez pleaded guilty to conspiring to launder money. The conspiracy statute that Lopez pleaded guilty to violating, section 1956(h), is undoubtably divisible by the underlying crimes a defendant could be convicted of conspiring to commit. The statute prohibits "conspir[ing] to commit any offense defined in [section 1956] or section 1957" of Title 18. 18 U.S.C. § 1956(h).

Lopez's indictment—a *Shepard* document—charged her under section 1956(h) with conspiring to launder money in violation

of sections 1956(a)(1)(B)(i) and 1957. Section 1957 prohibits "knowingly engag[ing] . . . in a monetary transaction in criminally derived property of a value greater than $10,000 and . . . derived from specified unlawful activity." 18 U.S.C. § 1957(a). That provision is clearly indivisible, as it does not include any clauses that could be construed as alternative elements. *See Talamantes-Enriquez v. U.S. Att'y Gen.*, 12 F.4th 1340, 1349 (11th Cir. 2021). Section 1956(a)(1), in contrast, prohibits financial transactions involving the proceeds of certain unlawful activity under alternative circumstances:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—
> (A)(i) with the intent to promote the carrying on of specified unlawful activity; or
> (ii) with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or
> (B) knowing that the transaction is designed in whole or in part—
>> (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or
>> (ii) to avoid a transaction reporting requirement under State or Federal law,
>
> [shall be punished as provided.]

18 U.S.C. § 1956(a)(1).

Section 1956(a)(1) encompasses four clauses that could be construed as elements or means. We express no opinion as to whether section 1956(a)(1)(A) and section 1956(a)(1)(B) outline separate offenses. We need decide only whether section 1956(a)(1)(B)(i) and section 1956(a)(1)(B)(ii) are elements of different crimes or instead means of committing the same crime because, for reasons we explain later, a violation of section 1956(a)(1)(B)(ii) does not categorically involve moral turpitude.

The touchstone of a divisibility analysis is whether alternative clauses in the statute describe elements of the crime or means of commission. "Alternative sets of elements usually signal divisibility." *Talamantes-Enriquez*, 12 F.4th at 1349. "But alternative sets of various factual means of committing a single element usually do not." *Id.* (citation and internal quotation marks omitted). "If statutory alternatives carry different punishments, then . . . they must be elements." *Mathis*, 579 U.S. at 518. "Conversely, if a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission." *Id.* (citation omitted). If it is not clear from the text of the statute, caselaw, or other evidence such as an indictment or jury instructions whether the statute is divisible—in other words, if those "sources do not speak plainly"— then "courts must resolve the inquiry in favor of indivisibility." *United States v. Gillis*, 938 F.3d 1181, 1204 (11th Cir. 2019) (citation and internal quotation marks omitted).

No precedent controls the question whether section 1956(a)(1)(B) is divisible. In the context of a sufficiency-of-the-

evidence challenge, we once stated that "[t]he four subsections of Section 1956(a)(1) are separate offenses, each of which requires the Government to prove an element not required under the others." *United States v. Calderon*, 169 F.3d 718, 720 (11th Cir. 1999). But we later described that statement as dicta and concluded that we are not bound by it. *United States v. Seher*, 562 F.3d 1344, 1361 (11th Cir. 2009). In the context of duplicative-prosecution challenges, which apply a different test than the divisibility analysis under the categorical approach, we have since held that similarly structured sections 1956(a)(2) and 1956(a)(3) each constitute a single crime. *United States v. Felts*, 579 F.3d 1341, 1344 (11th Cir. 2009) (discussing section 1956(a)(2)); *Seher*, 562 F.3d at 1362 (discussing section 1956(a)(3)). These decisions suggest that, at an even higher level of specificity, section 1956(a)(1)(B)(i) and section 1956(a)(1)(B)(ii) describe alternative means of committing the same crime.

The Second Circuit has addressed the distinction between sections 1956(a)(1)(B)(i) and 1956(a)(1)(B)(ii). *See United States v. Holmes*, 44 F.3d 1150, 1153–54 (2d Cir. 1995). Cloyd Holmes and Salvatore Frasca argued that the government had charged them under a "multiplicitous indictment," "one that charges in separate counts two or more crimes, when in fact and law, only one crime has been committed." *Id.* The Second Circuit declined to "accept the government's implicit contention that the same financial transaction gives rise to two separate crimes simply because the defendant, at the time he deposited the money, knew that what he was doing— the prohibited conduct—was designed for two unlawful purposes: concealing proceeds *and* avoiding reporting requirements." *Id.* at

1155. It ruled that "[C]ongress must be deemed to have intended only a single punishment for each transaction even though the defendant may have had two improper purposes in mind." *Id.* at 1155–56. So, it treated sections 1956(a)(1)(B)(i) and (B)(ii) as different means of committing the same offense, not as separate offenses.

We likewise conclude that section 1956(a)(1)(B)(i) and section 1956(a)(1)(B)(ii) outline two means of committing the same knowing-concealment crime. Conviction under both clauses requires proof of the same mens rea: knowledge. 18 U.S.C. § 1956(a)(1)(B). Conviction under either clause results in the same penalty: "a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both." *Id.* § 1956(a)(1). The difference lies only in what facts the defendant knew about the nature and purpose of the transaction and funds at issue. Knowledge of the improper purpose is the means by which the transaction is rendered illicit. Even when a transaction has both prohibited purposes, it constitutes a single crime so long as the defendant knew of at least one of those illicit purposes.

### B. Lopez's Crime of Conviction Does Not Categorically Involve Moral Turpitude.

When we turn to whether violations of section 1957 or section 1956(a)(1)(B) are crimes of moral turpitude, we look to the least culpable conduct prohibited for each offense. Section 1957 contains no alternative elements. And structuring a transaction

that involves proceeds of unlawful activity to avoid a reporting requirement, under subpart (ii), constitutes the least culpable conduct prohibited by section 1956(a)(1)(B).

This Court defines moral turpitude as "baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." *Daye*, 38 F.4th at 1360 (citation omitted). We have determined that a crime involving moral turpitude is one that violates both a statute and an independent "moral norm." *Id.* (citation omitted). "[T]he inherent nature of the offense," and not "the circumstances surrounding a defendant's particular conduct," is the focus of our analysis. *Fajardo v. U.S. Att'y Gen.*, 659 F.3d 1303, 1305 (11th Cir. 2011) (citation omitted).

Our precedents are instructive. Fraud offenses meet this standard. *Zarate v. U.S. Att'y Gen.*, 26 F.4th 1196, 1201 (11th Cir. 2022); *see also Jordan v. De George*, 341 U.S. 223, 232 (1951) ("[C]rimes in which fraud was an ingredient have always been regarded as involving moral turpitude."). Other offenses, in contrast, must "satisfy the 'inherently base, vile, or depraved' requirement." *Daye*, 38 F.4th at 1360 (citation omitted). This Court has long held that, "[g]enerally, a crime involving dishonesty or false statement is considered to be one involving moral turpitude." *Itani v. Ashcroft*, 298 F.3d 1213, 1215 (11th Cir. 2002) (quoting *United States v. Gloria*, 494 F.2d 477, 481 (5th Cir. 1974)). But that language should not be "taken literally to mean that non-fraudulent deceit *always* involves

moral turpitude." *Zarate*, 26 F.4th at 1208 (emphasis added). The crime must still involve conduct that is "inherently base, vile, or depraved." *Id.* at 1202 (citation omitted).

Examples of base, vile, and depraved conduct from our caselaw highlight the distinction between behavior that is inherently immoral and that which is merely illegal. *Compare Gelin v. U.S. Att'y Gen.*, 837 F.3d 1236, 1240–41 (11th Cir. 2016) ("This Court has also previously held that uttering a forged instrument, resisting an officer with violence, criminal reckless conduct, second-degree arson, aggravated battery, aggravated child abuse, and misprision of a felony are all crimes involving moral turpitude."), *with United States v. Smith*, 420 F.2d 428, 432 (5th Cir. 1970) (explaining that "dispensing of amphetamine sulphate tablets without a prescription" and "possessing tax-paid alcoholic beverages in a 'dry' county" are not crimes of moral turpitude). A requirement of "criminal intent" may be informative. *Smith*, 420 F.2d at 432; *see also Keungne v. U.S. Att'y Gen.*, 561 F.3d 1281, 1287 (11th Cir. 2009) (holding that criminal recklessness involves moral turpitude).

Section 1957 does not define a crime of moral turpitude. The prohibited conduct involves "knowingly engag[ing] . . . in a monetary transaction in criminally derived property of a value greater than $10,000 and . . . derived from specified unlawful activity." 18 U.S.C. § 1957. Engaging in a transaction with "criminally derived property" is not inherently fraudulent and does not necessarily require deceit. *See Zarate*, 26 F.4th at 1202, 1208. Nor is such activity "inherently base, vile, or depraved." *Id.* (citation omitted).

Structuring a transaction to avoid a reporting requirement, as defined by 18 U.S.C. section 1956(a)(1)(B)(ii), is also not a crime categorically involving moral turpitude. The offense does not necessarily involve fraud. *See id.* at 1202 ("Fraud requires that a misrepresentation be made to obtain a benefit from someone or cause a detriment to someone."). And, although the crime arguably involves deceit, it does not necessarily involve activity that is "inherently base, vile, or depraved." *Id.* at 1202, 1208 (citation omitted). The structuring and reporting of financial transactions has no inherent moral significance. For example, the Supreme Court described violation of a currency-export reporting requirement as causing "minimal" harm and only depriving the government of information. *United States v. Bajakajian*, 524 U.S. 321, 337–39 (1998) (discussing the severity of the crime in an Excessive Fines Clause case); *see* 31 U.S.C. § 5316(a)(1)(A) (1998). The Ninth Circuit has held that the violation of a different statute prohibiting the structuring of transactions to avoid currency reporting requirements is not a crime of moral turpitude. *Goldeshtein v. Immigr. & Naturalization Serv.*, 8 F.3d 645, 648 (9th Cir. 1993); *see* 31 U.S.C. § 5324(a)(3). And the Fifth Circuit rejected an analogy between a violation of section 1956(a)(3)(B), which involves concealing or disguising the nature of funds, and the violation of a "mere reporting requirement." *Smalley v. Ashcroft*, 354 F.3d 332, 338–39 (5th Cir. 2003). It determined that the former involved moral turpitude even though the latter did not. *Id.* So we hold that a violation of section 1956(a)(1)(B) is not categorically a crime of moral turpitude.

### IV. CONCLUSION

We **REVERSE** the judgment on the pleadings in favor of the government and remand for further proceedings consistent with this opinion. We leave it to the district court to determine first whether all the counts should be dismissed in the light of this decision.

21-12709                    GRANT, J., concurring                    1

GRANT, Circuit Judge, concurring:

The majority's analysis adds yet another level of complication to the famously bewildering categorical approach. Unfortunately, it is correct.

The result is another example of the absurdities that can follow from the categorical approach. Lopez pleaded guilty to conspiracy to commit money laundering under 18 U.S.C. § 1956(a)(1)(B)(i), a crime that plainly involves moral turpitude. *See Zarate v. U.S. Att'y Gen.*, 26 F.4th 1196, 1201 (11th Cir. 2022) ("crimes in which fraud was an ingredient have always been regarded as involving moral turpitude"). She committed that crime during a time period that rendered her ineligible for citizenship. *See* 8 U.S.C. § 1427(a). That means her citizenship was illegally procured, and the United States should be able to denaturalize her. *See id.* § 1451(a).

But no. That straightforward and just outcome falls victim to the categorical approach, which produces quite the opposite—an outcome that is both complicated and unjust. So instead of considering the specific statutory provision in the count that Lopez pleaded guilty to violating, we consider whether a different statutory provision—one that no one has argued she violated—would also qualify as a crime involving moral turpitude. Because it would not, Lopez retains her citizenship.[1] That result is baffling.

---

[1] At least for now. The government may still have a viable denaturalization claim based on concealment or misrepresentation under 8 U.S.C. § 1451(a).

2                    GRANT, J., concurring                    21-12709

The categorical approach flouts the intent of Congress, requires an inordinate amount of judicial energy, and defies common sense.  For those reasons and more, I join the list of judges who have criticized the categorical approach or pleaded with Congress to set us free from it.  *See, e.g.*, *United States v. Scott*, 990 F.3d 94, 126–27 (2d Cir. 2021) (en banc) (Park, J., concurring) (collecting cases).  I respectfully, if reluctantly, concur.